Jackson vs. Wisconsin Telephone Co.

JACKSON, Respondent, vs. WISCONSIN TELEPHONE COMPANY, Appellant.

*September 4— October 2, 1894.*

| 88 | 243 |
|---|---|
| 92 | 615 |

| 88 | | 243 |
|---|---|---|
| s26 LRA | | 101 |
| 35 LRA | | 199n |

(1–3) *Negligence: Proximate cause: Fire caused by lightning: Disused telephone wire: "Act of God:" Court and jury.* (4) *Instructions to jury.* (5) *Costs in supreme court: Printing.*

1. Upon a plateau about eighty feet above the surrounding country stood plaintiff's barn and another building, about 325 feet apart, each having on its top a flagpole twenty to thirty feet high. A telephone company had left a wire attached to the pole on the other building and running thence to the roof of the barn. During a storm the other building was struck by lightning, and a few minutes — or seconds — later flames broke out on the roof of the barn, and it was destroyed. The evidence showed that the barn was fired by lightning, and tended to show that there was but one flash or

stroke; that the flagpole on the other building was shattered down to about the place where the wire was attached, but the building was otherwise uninjured; and that the flagpole on the barn was not damaged by the lightning. *Held,* that the evidence sustained a verdict to the effect that the negligence of the telephone company in leaving the wire in that condition was the proximate cause of the burning of the barn. It cannot be said, as matter of law, that it was entirely improbable that the other building, situated as it was, should be struck by lightning; and the verdict finding that the bolt which struck that building was the same bolt which fired the barn cannot be said to be based on mere conjecture. NEWMAN and PINNEY, JJ., dissent, being of opinion that the neglect of the company to remove the wire, if a cause of the loss, was a remote cause.

2. The question whether it was possible or probable that the lightning striking the other building would be conducted over the telephone wire so as to set fire to the barn more than 300 feet away, was properly a question for the jury on the evidence, including the opinions of experts.

3. The telephone company cannot escape liability for its negligence on the ground that the stroke of lightning was "an act of God."

4. It is not error to refuse to give special instructions which are substantially given in the general charge.

5. Respondent's brief of 147 pages being unjustifiably long, he is allowed therefor, in the taxation of costs, the expense of printing forty pages only.

APPEAL from the Circuit Court for *Chippewa* County. This action is brought to recover damages for a barn and its contents, burned, as plaintiff claims, by reason of defendant's negligence. Near the city of Eau Claire there is a plateau about eighty feet above the level of the surrounding country. In August, 1889, two large frame buildings, about 325 feet distant from each other, stood upon this plateau, one being a county fair building known as Floral Hall, and the other being the barn of the plaintiff. These buildings were about the same height, and upon the top or ridge of each there stood a flagpole or mast twenty to thirty feet in height. Prior to the year 1888 the defendant had constructed a telephone line from the highway

running past the fair grounds. In September, 1888, the defendant placed a telephone in Floral Hall, and connected it with No. 12 wire with its telephone line on the highway. This connecting wire ran from the highway first to the flagpole upon plaintiff's barn, and was there tied to the pole; from thence it ran directly to Floral Hall. There was a dispute as to the place where this wire was fastened to Floral Hall, the plaintiff's witnesses testifying that it was fastened directly to the flagstaff upon Floral Hall, a foot or so above the roof, while the defendant's witnesses claim that it was attached to nails on the side of the building. The plaintiff gave no permission to attach the wire to his barn, and testified that he had no knowledge that it was so attached. A ground wire from the telephone in the interior of Floral Hall ran up to the flagstaff, and thence a distance of about 376 feet to the ground, where it was attached to an iron water pipe. Some time in the fall of 1888 the defendant took out the telephone from Floral Hall, together with the insulated wire in the interior of the building. The ground wire was left intact, and so was the wire from Floral Hall to the barn. The wire from the highway to *Jackson's* barn was taken down, but it was claimed by the plaintiff's witnesses that a considerable piece of said wire at the barn end thereof was left resting upon the roof of the barn.

On the night of the 20th day of August, 1889, there was considerable rain. At about 4 o'clock in the morning there was a flash of lightning, which was described by the witnesses as a blinding flash, and which was thought by them to have descended upon Floral Hall. In a few minutes the roof of plaintiff's barn was in flames, and the barn and its contents were destroyed. Two men were sleeping in a shed or building upon the fair ground, and they immediately went to the barn, and testify that the flagpole upon Floral Hall was completely shattered, while the flagpole

upon the barn was untouched. The plaintiff's claim is that the lightning struck Floral Hall, and was conducted by the wire to plaintiff's barn, and set it on fire, and that the defendant was negligent in leaving the wire thus attached to the barn. Much expert evidence was adduced on both sides as to the probability of lightning passing over such a wire and destroying the barn. A motion for nonsuit was overruled, as was also a motion to direct a verdict for defendant.

The jury returned a special verdict, finding: *First*, that the defendant connected the plaintiff's barn with Floral Hall by means of a telephone wire attached to the flagstaff of the barn and to the flagstaff on Floral Hall, without any intermediate attachment; *second*, that defendant left the wire so located on the plaintiff's barn that a portion of the same rested on the roof; *third*, that the barn was thereby subjected to danger of being destroyed by fire caused by lightning electricity passing over such wire from Floral Hall to the barn; *fourth*, that the fire was caused by lightning electricity so passing over said wire; *fifth*, that in so leaving the barn connected with Floral Hall the defendant's servants were guilty of want of ordinary care; *sixth*, that such want of ordinary care was the proximate cause of the fire; *seventh*, that this result was one which a person reasonably well skilled in the defendant's business might reasonably have expected would probably occur; *eighth*, that the plaintiff did not give defendant permission to attach the wire to his barn; *ninth*, that plaintiff did not know, before the fire, that his barn was connected with Floral Hall by the wire; *tenth*, that he did not know of the danger before the fire; *eleventh*, that the plaintiff's damages were $9,258. From judgment for the plaintiff upon this verdict the defendant appeals.

For the appellant there was a brief by *Miller, Noyes & Miller*, attorneys, and *V. W. James*, of counsel, and oral

argument by *B. K. Miller* and *Geo. H. Noyes.* They contended, *inter alia,* that the proximate cause is the cause which led to, and which might have been expected to be directly instrumental in producing, the result. *State v. Manchester & L. R. Co.* 52 N. H. 552; *Topsham v. Lisbon,* 65 Me. 449; *Ins. Co. v. Boon,* 95 U. S. 117. In other words, the injury must be the natural and probable consequence of the negligence. *Hoag v. L. S. & M. S. R. Co.* 85 Pa. St. 293; *Penn R. Co. v. Kerr,* 62 id. 353; *West Mahanoy v. Watson,* 116 id. 344; *Milwaukee & St. P. R. Co. v. Kellogg,* 94 U. S. 469; *Putnam v. B. & S. A. R. Co.* 55 N. Y. 108; *Sharp v. Powell,* L. R. 7 C. P. Cas. 253; Addison, Torts (B. & Bro. ed.), 6; Cooley, Torts, 69. Liability depends upon the fact that the consequence of the act was "such as under the surrounding circumstances might and ought to have been foreseen by the wrong-doer as likely to flow from his act." *Penn. R. Co. v. Hope,* 80 Pa. St. 373; *Atchison, T. & S. F. R. Co. v. Stanford,* 12 Kan. 354; *Poeppers v. M., K. & T. R. Co.* 67 Mo. 715; *Maher v. W. & St. P. R. Co.* 31 Minn. 401; *Morrison v. Davis,* 20 Pa. St. 171; *Lynch v. Knight,* 9 H. L. Cas. 577; *Crater v. Binninger,* 33 N. J. Law, 513; *McGrew v. Stone,* 53 Pa. St. 436; *Henry v. So. Pac. R. Co.* 50 Cal. 176; *Doggett v. R. & D. R. Co.* 78 N. C. 305; *Stanley v. U. D. R. Co.* 114 Mo. 606; *Weick v. Lander,* 75 Ill. 93; *Daniels v. Ballantine,* 23 Ohio St. 532; *Fent v. T., P. & W. R. Co.* 59 Ill. 349; *Greenland v. Chaplin,* 5 Exch. 243; *Atkinson v. Goodrich Transp. Co.* 60 Wis. 141. The defendant may have been negligent and the plaintiff may have suffered an injury, but the latter must fail in his action unless the connection between the negligence and the injury can be made out. *Adkins v. A. & C. A. R. Co.* 27 S. C. 71; *Daniel v. Metropolitan R. Co.* L. R. 3 C. P. 215; *Williams v. G. W. R. Co.* L. R. 9 Exch. Cas. 157; *Holmes v. Fond du Lac,* 42 Wis. 282; *Sharp v. Powell,* L. R. 7 C. P. Cas. 253; Pollock, Torts, 43; *Regina v. Bennett,* 4 Jur. (N. S.), 1088; *Vedder v.*

*Hildreth*, 2 Wis. ·429; *Ward v. M. & St. P. R. Co.* 29 id. 144; *Harris v. Cameron*, 81 id. 239.    The act complained of was the act of God.    *Blyth v. Birmingham W. Co.* 11 Exch. 781; *Blythe v. D. & R. G. R. Co.* 15 Colo. 333; *Baltimore & O. R. Co. v. Sulphur Spring Ind. S. Dist.* 96 Pa. St. 65; *Knoll v. Light*, 76 id. 268; *Flori v. St. Louis*, 69 Mo. 341; *Borchardt v. Wausau B. Co.* 54 Wis. 107; *Mich. Cent. R. Co. v. Burrows*, 33 Mich. 6; *Long v. Penn. R. Co.* 147 Pa. St. 343.

For the respondent there was a brief by *H. H. Hayden* and *T. F. Frawley*, attorneys, and *W. H. Stafford*, of counsel, and oral argument by *Mr. Frawley.*    They argued, among other things, that the fact that a natural cause contributed to produce the injury which would not have happened without the unlawful act of the defendant, does not make it an act of God and excuse the defendant.    2 Thomp. Neg. 1067; Whart. Neg. § 86; *Lord Bailiff v. Corp. of Trinity House*, L. R. 5 Exch. 204; *Ellet v. St. Louis, K. C. & N. R. Co.* 12 Am. & Eng. R. Cas. 183; *Piedmont & C. R. Co. v. McKenzie*, 75 Md. 458; *Polack v. Pioche*, 35 Cal. 416, and cases cited; *Chidester v. Consolidated D. Co.* 59 id. 197; *Rodgers v. C. P. R. Co.* 67 id. 607; *Southwestern T. & T. Co. v. Robinson*, 50 Fed. Rep. 810; *Dickinson v. Boyle*, 17 Pick. 78; *Salsbury v. Herchenroder*, 106 Mass. 458; *George v. Fiske*, 32 N. H. 32; *McArthur v. Sears*, 21 Wend. 196; *Pittsburgh v. Grier*, 22 Pa. St. 54; *Scott v. Hunter*, 46 id. 192; *Livezey v. Phila.* 64 id. 106; *Baltimore & O. R. Co. v. Sulphur Spring Ind. S. Dist.* 96 id. 65; *Couts v. Neer*, 70 Tex. 468; *Gleason v. Va. M. R. Co.* 140 U. S. 435.    The act of the defendant was the proximate cause of the plaintiff's loss.    Whart. Neg. § 2; Shearm. & Redf. Neg. §§ 29, 30; *Burrows v. M. G. & C. Co.* L. R. 5 Exch. Cas. 57; *Smith v. L. & S. W. R. Co.* L. R. 6 C. P. Cas. 21; *Sub-Marine Tel. Co. v. Dickson*, 15 C. B. (N. S.), 759; *Scott v. Shepherd*, 2 W. Bl. 892; *Lynch v. Nurdin*, 41 Eng. C. L. 422; *Former v.*

*Geldmecher,* 13 Rep. 790; *Vaughn v. Menlove,* 32 Eng. C. L. 613; *Baltimore C. P. R. Co. v. Kemp,* 18 Am. & Eng. R. Cas. 231; *Powell v. Deveney,* 3 Cush. 300; *Higgins v. Dewey,* 107 Mass. 494; *Metallic C. Casting Co. v. Fitchburg R. Co.* 109 id. 277; *Beauchamp v. Saginaw M. Co.* 50 Mich. 163; *Griggs v. Fleckenstein,* 14 Minn. 81; *Johnson v. C., M. & St. P. R. Co.* 31 id. 57; *Ehrgott v. N. Y.* 96 N. Y. 264; *Lowery v. Manhattan R. Co.* 99 id. 158; *Milwaukee & St. P. R. Co. v. Kellogg,* 94 U. S. 469; *Kellogg v. C. & N. W. R. Co.* 26 Wis. 223; *Brown v. C., M. & St. P. R. Co.* 54 id. 342; *Atkinson v. Goodrich Transp. Co.* 60 id. 141; *Fowler v. C. & N. W. R. Co.* 61 id. 159. The proximate cause of an injury is ordinarily for the jury. It is not a question of science or legal knowledge. It is to. be determined as a fact in view of all the circumstances of fact attending it. *Vaughan v. T. V. R. Co.* 3 Hurl. & N. 743; *Smith v. L. & S. W. R. Co.* L. R. 5 C. P. Cas. 98; *Collins v. Middle L. Comm'rs,* L. R. 4 C. P. Cas. 279; *Romney Marsh v. Trinity House,* L. R. 5 Exch. Cas. 204; *S. C.* L. R. 7 Exch. Cas. 247; *Sneesby v. L. & Y. R. Co.* L. R. 9 Q. B. Cas. 263; *Byrne v. Wilson,* 15 Ir. Com. Law, 332; *The George & Richard,* L. R. 3 Ad. & Ecc. 466; *Jones v. Boyce,* 1 Stark. 493; *Butler v. Wildman,* 3 Barn. & Ald. 398; *Vandenburg v. Truax,* 4 Denio, 464; *Fent v. T. P. & W. R. Co.* 59 Ill. 349; *Marcy v. Merchants' M. Ins. Co.* 19 La. Ann. 388; *Perley v. Eastern R. Co.* 98 Mass. 414; *Lund v. Tyngsboro,* 11 Cush. 563; *Higgins v. Dewey,* 107 Mass. 494; *Annapolis & E. R. Co. v. Gantt,* 39 Md. 115, 141; *Brady v. N. W. Ins. Co.* 11 Mich. 425; *Hoyt v. Jeffers,* 30 id. 181; *Barton v. Home Ins. Co.* 42 Mo. 156; *Kuhn v. Jewett,* 32 N. J. Eq. 647; *St. John v. Am. M. F. & M. Ins. Co.* 11 N. Y. 519; *Ins. Co. v. Tweed,* 7 Wall. 44; *Kellogg v. M. & St. P. R. Co.* 94 U. S. 469; *Ins. Co. v. Boon,* 95 id. 117; *Kellogg v. C. & N. W. R. Co.* 26 Wis. 223; *Brown v. C., M. & St. P. R. Co.* 54 id. 342; *Atkinson v. Goodrich Transp. Co.* 60 id. 141;

*Kreuziger v. C. & N. W. R. Co.* 73 id. 158; *Spaulding v. Sherman,* 75 id. 77; *Baltzer v. C., M. & N. R. Co.* 83 id. 459.

WINSLOW, J. It was strenuously and ably argued by the appellant's counsel that the evidence did not show that the negligent act of defendant was the proximate cause of the burning of plaintiff's barn. The rule is well settled in this state that, in order to render a negligent act the proximate cause of an injury, it must appear "that the injury was the natural and probable consequence of the negligence or wrongful act, and that it ought to have been foreseen in the light of the attending circumstances." *Atkinson v. Goodrich Transp. Co.* 60 Wis. 141, 156; *Marvin v. C., M. & St. P. R. Co.* 79 Wis. 140. The jury found all the elements necessary to constitute the negligent act of the defendant the proximate cause of the burning of the barn within this rule, and the question is whether the evidence justifies such finding. It is said that the striking of a building by lightning is a very infrequent occurrence, and that it could not be reasonably anticipated by any one. It is true that the number of buildings which are struck by lightning, as compared with the whole number of buildings in any given locality, is very small; but this fact by no means seems to us to be the final or controlling test of the question of probability. In this case there was a building situated upon a high plateau from eighty to ninety feet above the level of the surrounding country, with a flagpole upon the roof about twenty-five feet in height. Now, there are some facts of common knowledge known to every reasonable person who has passed the age of childhood. Among these facts are that in this latitude there are at certain seasons of the year frequent and violent thunderstorms; that at such times the clouds are heavily charged with electricity, which constantly finds its way to the earth in what we call

strokes of lightning; that these lightning strokes, in the great majority of cases, strike prominent objects, such as trees, poles, and high buildings, and follow them to the ground; that fire is frequently the result of such strokes. These facts are well known to all persons, and no proof of them by expert evidence is necessary. Can we say, as matter of law, in view of these well-known facts, that it was entirely improbable that a building situated, as Floral Hall was, upon the highest ground in the vicinity, with a flagpole upon it, should be struck by a discharge of lightning, simply because many buildings in such situations escape the stroke for years? We think not.

But it is said that it was simply a matter of conjecture whether the bolt which struck Floral Hall and shattered the flagpole was the bolt which set the fire, or whether the barn was fired by an independent stroke of lightning descending upon the barn at or about the same time that Floral Hall was struck. In considering this question, reference to the evidence is necessary. The evidence seems very conclusive that the barn was fired by a stroke of lightning, and that Floral Hall was struck by lightning and its flagpole shattered a very few minutes — perhaps only seconds — before the blaze broke out on the roof of the barn. These two facts are not open to doubt under the evidence. There were two witnesses sleeping in buildings on the fair grounds within a few hundred feet of the hall. Both testify that they were awake and saw the flash of lightning, and that it was right in the direction of Floral Hall. They immediately went out, found the barn burning and the flagpole on Floral Hall shattered, while the flagpole on the barn was uninjured. These witnesses, as well as several others who claim to have seen the flash, say that there was but one flash, one report, one "straight streak of lightning," "like a streak of hot iron." There was also evidence that the flagpole was only shattered down to about the place

where the wire leading to the barn was fastened, and that the ground wire, which seems to have been attached to the flagpole just below the barn wire, was burned for a distance of four or five feet from the pole. No damage was done to Floral Hall beyond the shattering of the pole. If these facts were all true, it would seem that they pointed pretty satisfactorily to the conclusion that the bolt which struck Floral Hall was the same bolt which fired the barn. Certainly a verdict to that effect, based on evidence establishing these facts, could not be said to be based on conjecture.

It is, however, argued that it is entirely improbable, if not well-nigh impossible, that a bolt of lightning striking one building would be conducted by a telephone wire over a span of 300 feet to another building, at least in sufficient quantity to fire the second building. This raises a scientific question, necessarily depending largely upon the opinions of expert witnesses. A considerable number of such witnesses were examined on both sides. The experts called by the plaintiff testified that if the loose end of the wire was left resting on the roof of the barn, and the roof and sides were wet with rain, the wire and wet barn would form a relatively good conductor of electricity; that such a wire would carry sufficient electricity to start a fire, and would form, under the circumstances, a good path to the ground; that a part, at least, of the bolt would probably follow this path to the ground; and that all these facts have been known for years, and the danger to the barn resulting therefrom was reasonably to be anticipated. On the other hand, an equal number of experts upon the other side were of opinion that it would be very improbable, if not impossible, for such a wire, under the circumstances, to carry sufficient lightning to set the barn on fire, and that the lightning would undoubtedly seek some shorter path to the earth. We cannot undertake to compare and decide which class of experts were the best qualified to speak au-

thoritatively upon this scientific question. They all quali-
fied themselves so as to make their testimony admissible
as expert evidence. Nor can we undertake to decide this
question of science ourselves. It was properly a question
for the jury after having heard the circumstances of the
case and the opinions of the experts, and we cannot say that
the jury have decided wrongly upon the question.

The further argument is made that the stroke of light-
ning was the "act of God," for which no one is responsi-
ble. Certainly a stroke of lightning is an "act of God;"
but that is not the question here presented, or rather an-
other element — i. e. the negligence of man — is added to
the question, which materially alters its scope. If I, own-
ing a high mast or building, which I know is so situated
as to be very likely to be struck by lightning, construct
an attractive path for the lightning to my neighbor's roof,
so that his house is destroyed by a bolt which strikes my
mast or building, shall I escape liability for my negligent
or wrongful act by pleading that the lightning was the act
of God? Certainly not. I invited the stroke of one of
the most destructive powers of nature, and negligently
turned its course to my neighbor's property. The prin-
ciple is the same as that involved in the case of *Borchardt
v. Wausau Boom Co.* 54 Wis. 107. The lightning stroke
is in no greater degree the act of God than the usual fresh-
ets occurring in a river.

Our conclusion is that the court properly refused to
grant a nonsuit, and also properly refused to direct a ver-
dict for the defendant.

Two instructions were asked by the defendant and re-
fused by the court, as follows: "No default, negligence, or
want of care on the part of the defendant can be presumed,
but it is for the plaintiff to satisfy (you) by a fair pre-
ponderance of the credible testimony that the defendant
was negligent, and, unless the evidence shall satisfy you,

you must find that there was no negligence on the defendant's part." "If, in your opinion, any witness has testified falsely as to any one material fact, then you are at liberty to disregard any other uncorroborated testimony given by such witness." As to the first of these instructions, it was substantially given by the court in the general charge in far stronger terms than it was asked by the appellant. Substantially the same remarks apply to the second instruction asked. The jury were most fully and carefully instructed as to their duty in weighing and judging of the credibility of witnesses, and, though the language of the instruction was not given, it is not seen how the instruction asked could have added anything to the unusually careful and clear cautions which were given them by the court.

A question is raised as to the form of certain questions put to the plaintiff's experts. We have examined them and find no error.

The respondent's brief contains 147 pages. There is no justification for so long a brief in this case. It is an abuse of the privilege of counsel, and a hindrance, rather than an aid, to the court. All the questions in the case could be fully discussed in less than one third the space. In taxing costs the clerk will only allow the respondent for his brief the expense of printing forty pages.

*By the Court.*— Judgment affirmed.

NEWMAN, J. The cause of damages is proximate only when it might reasonably have been expected by a man of ordinary intelligence and prudence that such damages would result from that cause. *Atkinson v. Goodrich Transp. Co.* 60 Wis. 141. The damages, as a consequence of the negligent act or omission, must be both natural and probable. *Barton v. Pepin Co. Agr. Society*, 83 Wis. 19. It cannot be said of any particular building that it is probable that

it will be struck by lightning. The chances are very largely against it. It could not have been foreseen as likely to happen that either Floral Hall or the plaintiff's barn would be struck by lightning. That might be, in the course of nature, but could not be anticipated as probable. The neglect of the defendant to remove the wire did not increase the danger or probability that either building would be struck. At most, it only rendered it possible that, in case either was struck, fire might be communicated to the other. It could not be the cause of either building being struck. It was a condition, rather than the cause, of the damages. If a cause at all, it was a remote cause.

PINNEY, J. I concur in the foregoing opinion by Mr. Justice NEWMAN.