RHODA BROWN, Administratrix of the Estate of C. F. BROWN, Deceased, Appellee, v. WEST RIVERSIDE COAL Co., Appellant.

**Mines and mining:** STORING OF EXPLOSIVES: NEGLIGENCE. A mine operator is required to exercise care in storing dynamite for use in the mine commensurate with the known danger and consequences liable to follow from an omission of such care; and where the same was stored in dangerous quantities in the only place provided for workmen as a shelter from storms, and for keeping their tools, clothing and lunches, the question of reasonable care for their safety was for the jury: and if there was negligence in so storing the same it

could not be negatived by the fact that the explosion was an unusual occurrence.

**Same:** NEGLIGENCE: BURDEN OF PROOF: EVIDENCE.    The plaintiff in an action for negligence is not required to prove his case beyond all reasonable doubt; it is sufficient if the circumstances justify a reasonable inference of the truth of the matters charged.    The circumstances surrounding the death of plaintiff's decedent, a mine employee, are held to justify a finding that his death was caused by an explosion of dynamite negligently stored by defendant, and not by a bolt of lightning.

**Negligence:** PROXIMATE CAUSE: INTERVENING AGENCIES.    Where the negligence of a responsible person concurs with an act of God in producing an injury, the negligent party will be held responsible, if the injury would not have happened but for his failure to exercise proper care.    As where defendant negligently stored dynamite for mining purposes in a room provided for the use of workmen and in which a telephone was installed, the fact that lightning may have caused an explosion of the dynamite killing the workmen did not relieve defendant of liability; and such negligence in storing the explosives was the proximate cause of the accident though the source of the spark which caused the explosion was accidental or unknown.

**Accidental death:** CONTRIBUTORY NEGLIGENCE: PRESUMPTION AS TO CARE: EVIDENCE.    Freedom from contributory negligence must be shown to authorize recovery in an action for negligent death, but in the entire absence of evidence from living witnesses concerning the circumstances of the accident, there is a presumption that the injured party was in the exercise of due care; and while this presumption may be rebutted by proof of circumstances indicating a different conclusion, it can rarely be made so clear as to authorize the court to determine the question of contributory negligence as a matter of law.

**Master and servant:** ASSUMPTION OF RISK: EVIDENCE.    A servant does not assume any risk created by the negligence of the master unless he knows and appreciates or as a reasonably prudent person ought to know and appreciate the peril arising from such negligence, and with such knowledge remains in the service.    Assumption of risk is an affirmative defense and the issue one of fact for the jury, unless the evidence is so conclusive that reasonable minds are not likely to differ.    In the instant case the evidence relating to the assumption of the risk by deceased arising from the negligent storing of dynamite by the employer is such as to take the issue to the jury.

**Instructions:** VERBAL INACCURACIES.    Mere verbal inaccuracies in an

6　instruction which are not misleading do not constitute reversible error.

*Appeal from Polk District Court.*—HON. JAMES A. HOWE, Judge.

THURSDAY, APRIL 8, 1909.

REHEARING DENIED, TUESDAY, SEPTEMBER 29, 1909.

ACTION to recover damages for the death of plaintiff's intestate. Judgment for plaintiff and defendant appeals. The material facts are stated in the opinion.—*Affirmed.*

*Parker, Hewitt & Wright,* for appellant.

*Thos. A. Cheshire,* for appellee.

WEAVER, J.—The defendant, a coal mining corporation, was engaged in the work of sinking a shaft for mining purposes near the city of Des Moines. The deceased was not a miner by occupation, but had for a short time been employed by the defendant doing work at and about the top of the shaft. After a few weeks of this service, he was put in charge of an engine used in hoisting the excavated material. This engine was not inclosed by any building; the only shelter for the engineer being a small roof or canopy not affording protection against severe storms. The boiler and engine stood north of the shaft, and about sixty feet farther to the north and west was a small frame shanty or building about ten feet square in which was a telephone connected with the city system. It was also used as a place where the workmen left their coats and tools, where they sometimes gathered at lunch time and found shelter from the storms. In it the defendants also deposited powder and dynamite supplied from time to time for use in blasting. The work

was being pushed both day and night; the men being employed in three shifts of eight hours each. The deceased was upon the night shift. At least twenty-five pounds of dynamite were used every twenty-four hours, and, instead of having large quantities of the explosive stored in advance, it was the practice to purchase and bring in boxes of twenty-five to fifty pounds each as the progress of the work required, and these boxes were stored in the shanty above described. For some time prior to the date in question, little or no black powder had been used, and a remnant of some twenty-five or more pounds of that material had been permitted to remain in the same room. On July 17, 1905, a twenty-five-pound box of dynamite was delivered, not more than one-half of which had been used at the time of the accident. There was also a supply of dynamite caps for use in exploding blasts. Brown knew, in a general way, at least, of the uses made of the shanty. At times he attended to telephone calls and sometimes carried powder and dynamite from the building to the shaft.

Early in the morning of July 10, 1905, and before the night shift of workmen had been relieved, there occurred a violent rainstorm, accompanied by thunder and lightning, during which the dynamite and powder in the shanty exploded, instantly killing Brown and his four fellow workmen constituting the entire force then on the work. It is supposed that some, if not all, of the number had gathered in the shanty for shelter from the storm, and that the explosives were ignited by a stroke of lightning. There is no living witness of any of the immediate circumstances of this calamitous occurrence, except a woman who from a distance of a mile and a half noticed the lightning stream down in the direction of the shanty and saw the explosion follow almost instantaneously. The nearest neighbor first upon the scene after the explosion and while the storm was still in progress, found the

broken strands of telephone wire dragging on the ground and noticed that from time to time they emitted sparks. To this witness the sound of the powder explosion and the noise of the thunder following the fatal lightning stroke seemed to unite in a single crash. A witness who was at the shanty during the evening before noticed the unused powder, dynamite, and caps, and says that the caps, or some of them, were directly under the telephone instrument. These caps are described as being very sensitive and easily exploded; each having a small copper wire attached through which to fire the charge by a spark from an electric battery. The body of Brown was found about thirty feet from his engine and forty feet from the location of the shanty. His legs were torn off, but the remainder of his body was not badly mutilated. There were no powder marks on his face. The bodies of his comrades were for the most part torn in fragments. From these circumstances it is argued by plaintiff that Brown was not in the shanty at the time of the explosion, but was either at his engine or at some point between the engine and the shanty.

The defendant is charged with negligence in failing to provide the deceased with a safe place to work, in storing and keeping powder, dynamite, and caps in the building which was the only place provided for the workmen to deposit their tools, clothing, and lunch, and in bringing into said shanty where such explosives were kept a telephone connected with wires upon which electric currents were admitted or liable to be conducted, without due regard to the danger of such wires becoming overcharged and causing an explosion such as did in fact result. To this claim the defendant interposes a denial of all negligence on its part. It also pleads that the deceased had been at work in said employment for a considerable period and was familiar with the conditions there prevailing, and with such knowledge had voluntarily

continued in the service without objection or complaint, thereby assuming the risk, if any, attendant thereon.

At the close of plaintiff's testimony in chief, the defendant moved for a directed verdict in its favor on the grounds: (1) Of an entire failure of evidence to show negligence on the part of the defendant; (2) failure of the evidence to show that defendant's negligence, if any, was the proximate cause of the intestate's death; and (3) failure of evidence to show that said intestate was himself free from negligence contributory to his death. This motion being overruled, the defendant offered evidence tending to show the general manner in which the work at and about the shaft had been carried on during the time deceased was in its service, the use to which the shanty was ordinarily put, and the knowledge and notice which deceased had of the conditions there prevailing. The motion for a directed verdict was thereupon renewed and again overruled. Certain requests for instructions to the jury were also submitted to the court and refused. After verdict had been returned for the plaintiff, the defendant moved for a new trial, assigning as grounds therefor alleged errors of the trial court in its rulings and instructions and insufficiency of the evidence to sustain a recovery of damages. This motion being denied and judgment entered on the verdict, the defendant appeals.

I. The first assignment of error argued by counsel is grounded upon the refusal of the trial court to hold as a matter of law that plaintiff had failed to establish any negligence on the part of the defendant with respect to the matters alleged in the petition. Argument would hardly seem necessary to show the unsoundness of this proposition. There is, of course, no negligence in the mere fact that defendant employed explosives in sinking the shaft to its mine, for such is the usual and approved,

1. MINES AND MINING: storing of explosives: negligence.

if not a necessary, method by which work of this kind is accomplished; but the fact that such dangerous instrumentalities may be properly used without exposing the employer to a charge of negligence does not by any means imply that he is discharged from the ordinary obligation to use reasonable care to protect his servants against injury therefrom. Indeed reasonable care demands increased watchfulness and greater caution in proportion, to the dangerous nature of the instrumentality employed; that is, "due care" means care which is reasonably commensurate with a known danger and the seriousness of the consequences which are liable to follow its omission. This rule is too familiar and fundamental in the law of negligence to call for any discussion or array of authorities.

The negligence charged in this case is not founded upon the use of explosives in the prosecution of the defendant's work, but in the alleged lack of care in keeping and storing them. This, under all ordinary circumstances, is a question of fact. For the court to say as a matter of law that storing powder, dynamite, and dynamite caps in dangerous quantities in the same and only room provided for the use of the workmen for refuge from the storm and keeping their tools, clothing, and lunches, the defendant exercised the full measure of its duty in the premises, would in our judgment be a very serious encroachment upon the time-honored province of the jury. It is no answer to this charge that there was no other convenient place to keep these explosives. The construction of a sufficient shelter or receptacle for that purpose, detached from the assembling place of the workmen, was a matter of but few moments, or at the most, few hours work and very slight expense, and, to say the very least, the question whether reasonable care did not require such precaution was a fair one for the consideration of the triers of fact. Nor is negligence negatived by the fact that the explosion was an unusual or extra-

ordinary occurrence—if there was negligence in creating
the conditions. *Dulligan v. Barber* (Mass.), 87 N. E. 567.

II.  It is also argued that, even if the defendant
was negligent in keeping the explosives in the shanty,
we are wholly without evidence from which to find that
this failure of duty was the proximate cause
of the disaster.  "Who can tell," counsel
ask, "what was the cause of the explosion—
whether lightning or some reckless or thoughtless act
of the workmen?  If it was lightning, who can tell
whether the stroke was not itself fatal to the men there
assembled independent of the resulting explosion?  If the
death of the party resulted by the explosion of the powder
and dynamite, and they were discharged by a bolt of
electricity, is not this an independent intervening agency
which breaks the line of causation between the defendant's
negligence and the death of the plaintiff's intestate?"  The
argument is a plausible one, but we think it cannot pre-
vail.  It is very true that it is not within human power
to discover and make known with certainty all of the
immediate circumstances attendant upon this tragedy, but
such exact and detailed proof is not required.  Courts and
juries are not infrequently confronted by cases in which
the ultimate facts of cause and effect are to be found,
not so much from direct proof of the circumstances as
they exist at the instant of the injury complained of, as
from proof of conditions existing before and after its
occurrence.  For instance, in the recent case of *Lunde v.
Cudahy,* 139 Iowa, 688, the body of the deceased was
found upon the floor of the room in which he was em-
ployed, and there had been no eyewitness of the cause
or manner of his death, yet the circumstances were such
as to show with moral certainty that he had fallen into
the wheel pit, through which he had been whirled upon
the spokes of the wheel and cast out again.  The plain-
tiff is not required to make his case beyond a reasonable

2. SAME: negli-
gence: burden
of proof:
evidence.

doubt. It is sufficient if the circumstances be such as to justify a reasonable inference of the truth of the matters charged. 2 Encyc. Evidence, 956.

In most cases the relation between cause and effect is a matter of inference only, but the conclusion is none the less satisfactory to the reasonable mind. A finding that the life of the deceased in this case was destroyed by the explosion of the powder and dynamite, and not by the lightning stroke, has ample support in the record. The place where the body was found and the manner in which it was dismembered point unmistakably to the explosion as an all-sufficient explanation of the cause of his death, while there is not the slightest circumstance to support the theory that he was killed by lightning. In *Brownfield v. Railroad Co.,* 107 Iowa, 258, we stated the rule to be that: "When a cause is shown which might produce an accident in a certain way, and an accident happens in that manner, it is a warrantable presumption, in the absence of showing of other cause, that the one known was the operative agency in bringing about the result." It is here shown without dispute that the explosives were in the shanty, that they were discharged wrecking the building, and that the persons first coming to the scene of destruction found the bodies, or the remnants of the bodies, of the five workmen scattered in and about the ruins. No other efficient cause for such results is shown, and to argue the possibility that these men were stricken dead by lightning is to indulge in conjecture pure and simple.

Nor are we able to say that, if the explosives were discharged by an electric bolt entering the building, it demonstrates the intervention of an independent agency which breaks the line of causation from defendant's negligent act and renders the death of the deceased so clearly accidental or providential that no right of recovery exists. This

3. NEGLIGENCE: proximate cause: intervening agencies.

feature of the case presents a question upon which there is much confusion in the authorities, and decisions may readily be found that, where some uncontrollable manifestation of nature unites with human negligence in causing injury to persons or property, the negligence of the human agent is treated as a condition, and not a cause of the injury, and relieves him from legal liability.  The origin of this rule is hinted at in the ancient formula by which every destructive exhibition of the laws of nature was denominated "an act of God," from which idea it was easy to reach the pious conclusion that an injury which had been caused or contributed to by the hand of God ought not to be made the basis for the recovery of damages before human tribunals; but this theory has been discarded by many courts, and among them is our own.  The subject was treated with great thoroughness by Mr. Justice McClain in *Shoe Co. v. Railroad Co.,* 130 Iowa, 123, and by Mr. Justice Deemer in *Vyse v. Railroad Co.,* 126 Iowa, 90.  The rule is there laid down that, when negligence of a responsible person concurs with a flood or storm or other so-called "act of God" in producing an injury, the party guilty of such negligence will be held liable for the injurious consequences, if the injury would not have happened but for his failure to exercise care.  These precedents are of such recent date and treat the subject so exhaustively that we need not here reopen the discussion farther than to say we are still satisfied with the legal and logical soundness of the rule there announced.  That a person whose negligence is the primary cause is not excused because a stroke of lightning intervenes to precipitate an injury, see *Jackson v. Telephone Co.,* 88 Wis. 243, (60 N. W. 430, 26 L. R. A. 101.)  The general subject of proximate cause and intervening agencies in cases of negligence is also treated quite fully in *Burk v. Creamery Package Co.,* 126 Iowa, 730; *Fishburn v. R. R. Co.,* 127

Iowa, 483; *Phinney v. Railroad Co.,* 122 Iowa 488; *Gould v. Schermer,* 101 Iowa, 588.

It is to be observed, in this connection, that plaintiff charges the defendant not only with negligence in keeping the explosives in the shanty, but also alleges that it negligently increased the hazard thus created by establishing a telephone in the same room with connecting wire or wires, upon which in case of storms an overcharge of electricity was liable to be conducted causing the ignition of the powder, dynamite, or caps. The fact of installing and connecting the telephone as alleged is not denied, but it is said there is no evidence that this condition had anything to do with the accident. No witness testifies— none can testify—that lightning did strike the building, or that electricity in dangerous force did enter it over the wire; but proof of a condition which rendered such results possible was a material circumstance with reference to the safety of the place. See *Jackson v. Telephone Co., supra.* The liability of telephone wires to be surcharged with electricity during violent storms is well known to all persons familiar with their use. It is shown by plaintiff's witnesses that the broken end of this particular wire continued to emit sparks for some time after the explosion, indicating that by reason of the condition of the atmosphere, or because of contact with other conductors carrying heavy currents, electricity in quantities capable of doing the alleged mischief was being brought into the immediate vicinity where the explosives had been stored; but we think it is not incumbent upon the plaintiff to point out or demonstrate the manner in which the explosives were ignited. Indeed it would not necessarily be a defense to the action, even if the record should demonstrate beyond all doubt that the immediate cause of the explosion was not chargeable to the negligence of any person. If the defendant was negligent in depositing the powder and dynamite in a place where their accidental ignition would

necessarily endanger the lives of its servants, such negligence would be the proximate cause of the resulting injury, notwithstanding the source of the sparks which explodes them be purely accidental or wholly unknown. *Tissue v. Railroad Co.,* 112 Pa. 91, (3 Atl. 667, 56 Am. Rep. 310.) That blasting powder and other high-power explosives of modern invention are liable to accidental ignition, with destructive consequences, even where apparently reasonable care is exercised to prevent such occurrence, has been too frequently proven by recurring disasters to call for argument, and, if there be lack of reasonable care in storing them too near the servant's place of work, such negligence is not purged by the exercise of care in other respects.

III.    As in all personal injury cases, there must be testimony from which the jury can properly find freedom from contributory negligence on the part of the deceased in order to sustain a recovery of damages.

4. ACCIDENTAL DEATH: contributory negligence: presumption as to care: evidence.

In this respect it is contended that the plaintiff has failed. It must be remembered, however, that in the utter absence of living witnesses there is a presumption that the deceased, actuated by the natural instincts of self-preservation, was in the exercise of reasonable care for his own safety. *Phinney v. Railroad Co.,* 122 Iowa, 492; *Hopkinson v. Knapp,* 92 Iowa, 328; *Dalton v. Railroad Co.,* 104 Iowa, 26; *Mynning v. Railroad Co.,* 64 Mich., 93 (31 N. W. 147, 8 Am. St. Rep. 804); *Lyman v. Railroad Co.,* 66 N. H. 200, (20 Atl. 976, 11 L. R. A. 364); *Cassidy v. Angell,* 12 R. I. 447 (34 Am. Rep. 690); *Johnson v. Railroad Co.,* 20 N. Y. 65 (75 Am. Dec. 375). True this presumption is not conclusive and may be rebutted by proof of circumstances tending to the opposite conclusion, but such proof can rarely, if ever, be made so clear and unmistakable as to enable the court to dispose of the issue thus presented as a matter of law. We find no such showing here, nor

do counsel point out any fact or circumstance which they rely upon to overcome this presumption. Even if it should be said that reasonable care on the part of the deceased would have forbidden his entrance to the shanty under the circumstances then surrounding him, it is a sufficient answer that it is by no means certain that he did enter or was in the building when the explosion occurred. The question of contributory negligence was properly left to the jury.

IV. The conclusions already announced dispose of the principal issues presented in this case, except the defense of assumption of risk pleaded by the defendant.

5. MASTER AND SERVANT: assumption of risk: evidence.
It is a familiar doctrine that the servant assumes all risks which inhere in or are incident to the nature and kind of service which he undertakes to perform, and, if such service involves the use of explosives or other dangerous instrumentalities, he takes upon himself the chances of all injury to which he may be exposed by their reasonable and proper use; but, as we have often had occasion to say, the servant does not assume any risk created by the negligence of his master unless he knows and appreciates, or as a reasonably prudent person ought to know and appreciate, the peril arising from the master's negligence, and chooses to remain in the service, in which latter event he is barred from the recovery of damage if injured. Assumption of risk on account of the master's negligence is an affirmative defense. It has been properly pleaded in the case before us and presents the most seriously debatable question argued by counsel. A careful consideration of the record inclines us to the view that in this, as in other respects mentioned, there was no error in submitting the issue to the jury. It must not be overlooked that, as already stated, this defense is affirmative in character, and that the issue thus presented is one of fact on which the parties are entitled to have a verdict unless the opposing

view is one upon which reasonable minds are not likely to differ. The testimony tends to show that, until coming into the service of the defendant, Brown had no experience in mining or in sinking mine shafts. It does not appear that he had any prior experience in works of excavation or in the care or use of explosives. He had been a butcher, farmer, and had had some experience with threshing machines. The boiler he was using at the defendant's mining shaft was part of a threshing outfit belonging to him. While it is shown that at times, though not repeatedly, he carried dynamite from the shanty to the shaft, and doubtless knew in a general way that it was a powerful explosive, it is at least doubtful whether he was aware of its sensitive character or understood the gravity of the peril to which those working in the vicinity were thereby exposed. The seeming indifference or confidence manifested by the defendant's managers in depositing and keeping these materials in the same shelter provided for the use and convenience of the workmen would naturally quiet the fears of an inexperienced employee. So far as shown, he was given no instructions or warning concerning the danger to be apprehended from this source. There is no charge of negligence in failing to warn or instruct the deceased with respect to this danger, but, in considering his conduct with reference to the question of assumption of risk, the fact whether he did have such notice or warning is relevant and material, because the rule as to assumption of risk has its basis in the servant's actual or constructive knowledge of the peril to which he is exposed. *Reed v. Stockmeyer,* 74 Fed. 186 (20 C. C. A. 381). See, also, cases collected in 2 Labatt's Master & Servant, section 271, note. Bearing upon the care required of the master in keeping and handling explosives and assumption of risk therefrom by the servant, the cases of *Mather v. Rillston,* 156 U. S. 391 (15 Sup. Ct. 464, 39 L. Ed. 464), and *Welch v. Iron Works,* 98 Me. 361 (57 Atl. 88), are quite in

point. In view therefore of all the circumstances disclosed by the record and the law which places the burden of establishing this defense upon the master, we cannot say there was any error in submitting it to the finding of the jury.

V. Other questions argued by counsel are incidental or subsidiary to those already considered, and we shall not attempt their minute consideration. It is urged, and for the purposes of the case it may be conceded, that defendant is not necessarily chargeable with negligence because it kept dynamite near the shaft, or because it installed the telephone in the shanty for the conveniences of its business; but it does not follow from this concession that the use of a single small room for the installation of the telephone, for the deposit of the explosives, and for the general convenience and shelter of the workmen, did not together constitute a dangerous combination which due care would have avoided.

In one of its instructions to the jury, the court, as the record would seem to indicate, used the word "prudent," where it evidently intended to say "imprudent;" but the whole trend and substance of the charge makes the inadvertence so very clear that we cannot conceive of any juror of average intelligence being thereby misled, and it is incredible that the defendant suffered any prejudice therefrom. We have often held that mere verbal inaccuracies of this kind are not reversible errors. *Flam v. Lee,* 116 Iowa, 289; *Meyer v. Baird,* 120 Iowa, 597; *Schaefer v. Insurance Co.,* 133 Iowa, 205; *Smith v. Insurance Co.,* 115 Iowa, 217.

6. Instructions: verbal inaccuracies.

No ground for setting aside the verdict being shown, the judgment of the district court is therefore *affirmed.*