TOLLEMAN, Respondent, vs. SHEBOYGAN LIGHT, POWER & RAILWAY COMPANY, Appellant.

*January 11—January 30, 1912.*

*Negligence: Pleading: Variance: Amendment to conform to proof: Appeal: Harmless errors: Street railways: Injury to passenger riding on step: Evidence: Negligence of conductor: Contributory negligence: Proximate cause: Intervening cause.*

1. Ordinarily, in an action for personal injuries grounded on negligence, the complaint must show what specific act or acts of negligence are relied upon, and this rule will be enforced where failure to observe it would operate to the disadvantage of the defendant on the trial.
2. In an action for injury to a passenger who, while riding upon the step of the rear platform of an electric car, collided with a pole beside the track, the acts of negligence charged were

failure to provide sufficient seating capacity and placing the poles too near the track. The jury found that the negligence which proximately caused the injury consisted in failure of the conductor (1) to discover and remove plaintiff from the step before the car started, (2) to inform him that he could not obtain a seat, and (3) to discover and remove plaintiff from the step after the car started and before he was injured. No amendment of the complaint was asked or ordered. *Held*, that the findings showed actionable negligence and, as the evidence on which they were based was mainly that of the conductor himself and no claim was made of surprise, a judgment on the verdict for plaintiff would not be reversed.

3. Properly, in such a case, the court should order the complaint to be amended and give defendant an opportunity to make a showing of surprise, before submitting questions as to grounds of negligence not within the issues.

4. The evidence—showing, among other things, that the accident occurred after dark; that the car, already overcrowded, had stopped to let on passengers at a station; that of the seven persons there waiting plaintiff got upon the lower step, two others climbed upon the rear fender, and the other four were unable to crowd on at all; and that the conductor was near the middle of the car and gave the starting signal without leaving that place—is *held* sufficient to warrant a finding that the conductor was negligent in failing to satisfy himself, before starting the car, that the passengers occupied safe positions.

5. Plaintiff, who was seventy-five years of age, having testified that when he stepped on the car he supposed that he would be able to get into the car, that he did not intend to ride on the step, but that the car started immediately and did not again stop before he was struck by the pole, a finding that he was free from contributory negligence was sufficiently supported by the evidence.

6. The swaying of the passengers in the vestibule which pushed plaintiff outward from the car, having been caused by the motion of the car, was an element of danger which the defendant should have foreseen and provided against, and cannot be regarded as an intervening efficient cause of plaintiff's injury, so as to relieve defendant from liability.

APPEAL from a judgment of the circuit court for Sheboygan county: MICHAEL KIRWAN, Circuit Judge. *Affirmed.*

On the evening of December 24, 1909, the plaintiff as a passenger boarded one of the interurban cars of the defendant

railway company. The car was filled to its capacity and the rear vestibule was crowded and plaintiff stood upon a step within the vestibule. After riding some distance, the swaying of the crowd against the plaintiff, caused by the swinging motion of the car, forced plaintiff outward so that he collided with a trolley pole at the side of the track and was thrown to the ground. This action was brought to recover damages for injuries sustained. The following special verdict was returned by the jury:

"(1) While being carried as a passenger on defendant's car and standing on the lower step thereof, at the time and place stated in the complaint, did a trolley pole of defendant's railway collide with plaintiff's body and cause him to be thrown from the car to the ground and injured? A. Yes.

"(2) From the time when plaintiff got on the car until he was injured, was it so crowded with passengers that he could not obtain a seat in it by the exercise of ordinary care and effort on his part? A. Yes.

"(3) If the conductor had exercised the degree of care which it was his duty to exercise for the safety of passengers, would he have discovered that plaintiff was standing on the car step and have removed him therefrom before the car started from station number seven (7)? A. Yes.

"(4) If the second question be answered 'Yes,' then answer this: If the conductor had exercised the degree of care specified in the third question, would he have seen plaintiff on the car step and have informed him, before the car started, that he could not obtain a seat in it? A. Yes.

"(5) If, after starting from station number seven (7), the conductor had exercised the degree of care stated in the third question, would he have discovered plaintiff on the car step and have removed him therefrom before plaintiff was injured? A. Yes.

"(6) In erecting so near to its railway track, as were, at the time plaintiff was injured, the two trolley poles with which his body came in contact, did the defendant company fail to exercise that degree of care which it was the duty of that company to exercise for the safety of passengers riding on its cars? A. Yes.

"(7) If the third, fourth, fifth, and sixth questions, or any one or more of them, be answered 'Yes,' then answer this: Was the negligence the existence of which is found by your answers to the third, fourth, fifth, and sixth questions, or by your answer or answers to any one or more of them, the proximate cause of plaintiff's injury? A. Yes.

"(8) If your answer to the seventh question be 'Yes,' then: State particularly what was the negligence which constituted such proximate cause. A. That negligence the existence of which is found by the answers to the third, fourth, and fifth questions.

"(9) Before the car started from station number 7, did plaintiff know that he could not obtain a seat in it? A. No.

"(10) If the answer to the ninth question be 'No,' then answer this: By the exercise of ordinary care on his part, would plaintiff have learned before the car started from that station that he could not get a seat in it? A. No.

"(11) By the exercise of ordinary care on his part, would plaintiff have discovered, before his injury occurred and in time to have prevented it by any means available to him, that while standing on the car step his body might collide with a trolley pole? A. No.

"(12) Was there on plaintiff's part any failure to exercise ordinary care which contributed to cause his injury? A. No.

"(12½) If plaintiff had not been pushed or pressed outward, as he testified that he was, by some other passenger at the rear of the car, would plaintiff have collided with the trolley pole by which he was thrown from the car step? A. No.

"(13) If the court shall be of the opinion that plaintiff is entitled to a judgment in his favor, what sum will reasonably compensate him for his injuries? A. Twelve hundred dollars."

Upon such verdict judgment was entered in favor of the plaintiff, from which judgment defendant appeals.

For the appellant there was a brief by *Bowler & Bowler*, and oral argument by *E. R. Bowler*. They cited *Miller v. Kenosha E. R. Co.* 135 Wis. 68, 73, 115 N. W. 355; *Cumberland & W. E. R. Co. v. Thompson*, 102 Md. 193, 62 Atl. 243;

*Johnson v. Brooklyn H. R. Co.* 63 App. Div. 374, 71 N. Y. Supp. 568; *Moskowitz v. Brooklyn H. R. Co.* 89 App. Div. 425, 85 N. Y. Supp. 960; *Willmott v. Corrigan C. St. R. Co.* 106 Mo. 535, 17 S. W. 490; *Cattano v. Metropolitan St. R. Co.* 173 N. Y. 565, 66 N. E. 563; *McVay v. Brooklyn, Q. C. & S. R. Co.* 113 App. Div. 724, 99 N. Y. Supp. 226; *Snyder v. C. S. & C. C. D. R. Co.* 36 Colo. 288, 85 Pac. 686, 8 L. R. A. N. s. 781.

For the respondent there was a brief by *Collins & Collins,* and oral argument by *W. B. Collins.* They cited, *inter alia,* *North Chicago St. R. Co. v. Polkey,* 203 Ill. 225, 67 N. E. 793; *Pray v. Omaha St. R. Co.* 44 Neb. 167, 62 N. W. 447; *North Chicago St. R. Co. v. Williams,* 140 Ill. 275, 29 N. E. 672; *Karr v. Milwaukee L., H. & T. Co.* 132 Wis. 662, 113 N. W. 62; *La Barge v. Union E. Co.* 138 Iowa, 691, 116 N. W. 816; *Wanzer v. Chippewa Valley E. R. Co.* 108 Wis. 319, 84 N. W. 423; *Graham v. Manhattan R. Co.* 149 N. Y. 336, 43 N. E. 917; *Beattie v. Detroit U. R. Co.* 158 Mich. 243, 122 N. W. 557; *Walters v. C. & N. W. R. Co.* 113 Wis. 367, 89 N. W. 140.

BARNES, J.   The complaint charged that the defendant was negligent in not supplying sufficient seating capacity, in consequence of which plaintiff was obliged to stand on the step of the rear platform of the car; that defendant was negligent in placing the poles which supported the trolley wires too close to the track; and that plaintiff was pushed outward by the crowd on the rear platform swaying against him, owing to the motion of the car, and was injured by coming in contact with one of the trolley poles.   The jury found that the defendant was negligent in placing the trolley pole as close to the track as it was placed, but in effect found that this negligence was not the proximate cause of plaintiff's injury.   The court submitted three other questions to the jury bearing on the negligence of the defendant, and in answer thereto the

jury found that in the exercise of ordinary care the conductor should (1) have discovered and removed plaintiff from the car step before the car started; (2) that the conductor should have informed plaintiff before the car started that he could not obtain a seat; and (3) that after the car started the conductor should have discovered the plaintiff on the step and should have removed him therefrom before he was injured. The jury found that each of these alleged negligent acts was the proximate cause of the injury. No amendment of the complaint was asked or allowed, and the appellant asserts that it was error to permit a recovery on a charge of negligence not relied on in the complaint. If the pleader had any intention of charging these acts of negligence, he did not make a very happy use of language to express such intent, and under the very liberal rules that have been adopted for the construction of pleadings it is difficult to read out of the complaint any charge of negligence against the conductor, unless it is found in the averment that defendant failed to furnish plaintiff with a seat, something that defendant admittedly could not do without depriving some other passenger of the seat which he occupied. It has often been held that a defendant in a personal injury action is entitled to know what specific act or acts of negligence the plaintiff seeks to charge him with, so that he may prepare his defense. *Odegard v. North Wis. L. Co.* 130 Wis. 659, 676, 110 N. W. 809; *Miller v. Kenosha E. R. Co.* 135 Wis. 68, 73, 115 N. W. 355. This rule manifestly operates to promote justice and fair play, and we have no intention of departing therefrom in any case where failure to observe it operates to the disadvantage of the defendant on the trial. In the present case substantially all of the evidence on which these findings were based was given by the conductor, and it is difficult to see how the defendant was injured by failure to plead more specifically the negligent acts found by the jury. The conductor said he was near the middle of the car when it was brought to a stop at station number 7 by

Tolleman v. Sheboygan L., P. & R. Co. 148 Wis. 197.

the motorman to let on passengers, and that he did not leave his place, but gave the signal to start when some one on the rear platform said all right. No showing was made on the motion for a new trial that defendant had or could produce any additional evidence that would or could have any bearing on these questions, and it was not claimed in this court that any such evidence would be forthcoming if a new trial were granted. If the conductor knew of plaintiff's dangerous position and failed to warn or remove him, he would be guilty of a negligent act. If he did not know, and if the jury might find that he was negligent because he failed to learn, we would have a case of negligence established as to either situation, and nothing that could be presented in the way of additional evidence on the point involved could affect this question. So, while we think that the court should have ordered the complaint to be amended and should have given the defendant an opportunity to make a showing of surprise if it could, before submitting the questions complained of to the jury, it is apparent in the present case that the failure to observe the formality of amending the complaint did not harm the defendant in any way, and for this reason there should be no reversal on this ground.

There was sufficient evidence to warrant the jury in finding that the defendant was negligent. The car was apparently overcrowded and so were the vestibules, and passengers were standing on the steps leading into the rear vestibule. It was about 6 o'clock on December 24th, long after dark at this time of the year. In this situation the car stopped to let on still more passengers at station number 7. There were seven passengers to take the car at this place. Two of them climbed on to the rear fender, and the plaintiff got on the lower step of the car. The other four were unable to crowd on at all. The conductor knew of the proximity of the trolley poles to the track and of the danger therefrom to passengers who might be overhanging the car. He should have known of the pro-

pensity of the average passenger to crowd on to a car if it were possible to get a foothold, rather than to walk or wait for another car. Under these circumstances, and considering the high degree of care which a carrier must exercise for the safety of its passengers, the jury might well have reached the conclusion that the conductor did not exercise ordinary care when he failed to satisfy himself before starting the car that his passengers occupied safe positions.

It is further insisted that plaintiff was guilty of contributory negligence and that it should be so held as a matter of law. The jury having found in favor of the plaintiff, we must assume that the evidence most favorable to him on this issue was found to be true. His evidence in substance was that when he stepped onto the lower step of the platform he supposed he would be able to get into the car and that he had no intention of riding on such step, or of riding at all unless he could get in a safe place on the car, but that the car started immediately after he got on the step and that he was obliged either to ride in this position or jump off the moving car; that he grasped the stanchions on either side of the steps and was struck before the car came to a stop and before he had any opportunity to get off. It might be mentioned in this connection that plaintiff was evidently no gymnast, being seventy-five years of age. Upon this evidence the jury might acquit the plaintiff of contributory negligence.

Lastly, it is argued that there was an intervening efficient cause which occasioned plaintiff's injury and therefore there can be no recovery. This alleged cause was the surging or swaying of the passengers in the vestibule against the plaintiff, whereby he was pushed outward more than ten inches beyond the side of the car. There is proof to the effect that this swaying was caused by the motion of the car. It is a matter of common knowledge that cars will sway in going around curves, as well as from other causes, and that persons standing therein will be affected by such motion. Surely this

is one of the things which would ordinarily occur and which would tend to make a position such as plaintiff occupied extremely dangerous. The pressure against plaintiff was an incident that resulted from the running of the car and not from any independent agency dissociated from its operation. So we think the rule invoked does not apply to the facts in this case. *Jackson v. Wis. Tel. Co.* 88 Wis. 243, 60 N. W. 430. This particular element of danger was one which defendant should have seen and provided against.

*By the Court.*—Judgment affirmed.