98 361
100 109
100 111

98 361
104 182

98 361
f106 47
106 83
106 265

## COLEMAN WELCH *vs.* BATH IRON WORKS.

### Cumberland. Opinion December 26, 1903.

*Negligence. Master and Servant,* Dangerous Appliances, Dynamite, Duty of Warning Servant not to be delegated, Assumption of Risk.

An employer of laborers may, when necessary for the prosecution of his work, use agencies and appliances which are particularly dangerous to the lives and limbs of those who use them, provided precautions can be and are taken to guard against such dangers, so that by the employment of these precautions the necessary and inherent dangers are reduced to a condition of reasonable safety, and unnecessary dangers can be avoided. Under these circumstances employers are required to exercise great care because of the corresponding great danger to those who are exposed.

And the additional duty is imposed upon an employer, who finds it necessary to adopt the use of particularly hazardous agencies and appliances, of giving full information to his servant, who does not already have that information, of the particular dangers arising from the use of such extraordinary hazardous agencies, and sufficient instructions in relation thereto, to enable him to intelligently determine whether or not he will accept the dangerous employment, and, if he does, that he may know how to avoid them by the exercise of due care upon his part. This doctrine is based upon the preliminary one that a servant who enters into the employment of another only assumes the risk of such dangers as are ordinarily incident to the employment, and such unnecessary dangers as he knows of and appreciates. The doctrine of assumption of risk has no application to dangers which are not and should not be contemplated by the servant, and certainly does not apply when there is an extraordinary risk of which the servant has no knowledge or warning. This duty of giving notice to a servant is one that cannot be delegated by the master to another so as to escape liability if the notice is not given.

The plaintiff was employed as a common laborer in making excavations in the frozen ground for the purpose of laying the foundations for a new building, dynamite was used to facilitate the work. The plaintiff knew that dynamite was being used, and had a general knowledge of its powerful explosive character, but he had no information in regard to any particular dangers of this explosive or of any means to be adopted to avoid them, and was not aware and had no reason to apprehend that any dynamite was in fact left, or was liable to be left, unexploded. No instructions were given him as to the care to be observed by him, in his work of removing the pieces of frozen earth, to see that none of the dynamite had been left unexploded.

There was evidence tending to show that when a number of charges of dynamite, placed in different holes, are attempted to be all fired by fuses at the same time, there is a liability that some of these charges, for various reasons, will not always explode and that this is not merely a remote possibility of so unusual an occurrence as not to be reasonably anticipated, but something so liable to occur, and so well known to those having experience in the use of dynamite, that care must be taken after every explosion to see that none of the charges were left unexploded, and that this was especially necessary in view of the great danger that a workman might strike one of the unexploded pieces with his pickaxe or shovel. There was also evidence tending to show that there were other peculiar dangers arising from the use of dynamite in this manner.

On the morning after an explosion of dynamite the day before, used in the manner above described, the plaintiff was directed by the foreman in charge of the crew to go to work with his pick and shovel removing the earth that had been loosened by the explosion, and while so at work an explosion occurred causing him great injury. It is fairly to be inferred that the explosion which did this injury was of a fragment of a dynamite cartridge placed in the ground in the course of blasting the day before, and which had not exploded with the rest.

*Held;* that under these circumstances a verdict for the plaintiff was warranted by the evidence upon the ground that the defendant had failed to perform its duty to give notice to the plaintiff of the peculiar dangers attending the use of dynamite as it was used in the prosecution of this work, or instructions as to the means to be taken of avoiding such dangers. *Also*, that the damages awarded by the jury are not excessive.

On motion and exceptions by defendant. Overruled.

The gist of the claim as set out in plaintiff's declaration is the alleged negligence of defendant, or its failure; (1) "To use proper diligence to provide a safe and suitable place for the plaintiff to work in, and to surround the plaintiff with proper and suitable safeguards to shield him from danger in the performance of his duty as aforesaid, and especially to see that all dynamite which had been in the holes as aforesaid was properly discharged or removed before calling the plaintiff to clear away the dirt and debris from said holes as aforesaid." (2) In not warning the plaintiff of the danger which defendant well knew to exist and of which he was ignorant and did not appreciate.

The grounds of defense as to the facts were: (1) That the accident was of a character not to be reasonably anticipated. (2) That neither the defendant nor its servants could be reasonably expected

or required to know or foresee that part of a charge of dynamite might explode and a part remain unexploded. (3) That the foreman and other men in charge of the blasting were competent and skillful for their work. (4) That the appliances provided and the place of employment were reasonably safe and suitable. (5) That the manner of conducting the blasting was proper. (6) That no incident connected with the blasting, either in the manner of loading or discharging, or the appearance of the ground thereafter, were such as to suggest to a reasonably competent and skillful workman that a piece of dynamite remained in the ground unexploded.

This was an action brought by an employee of defendant corporation to recover damages for injuries sustained by him while at work upon the defendant's premises January 4, 1899.

Plaintiff with other employees of the defendant corporation was engaged in clearing away the ground for foundation for the new machine-shop. Certain of the crew were blasting the frozen dirt which the defendant and others broke up with picks and carried away in barrows. On the morning of January 4th, defendant was set at work, by the foreman directing the men, at a spot where, the day previous, some charges of dynamite had been exploded, and while using his pick presumably struck a small piece of dynamite which remained in the ground after the aforesaid blasting and sustained the injuries complained of.

. The jury returned a verdict for the plaintiff for $5000.

*Charles P. Mattocks and Sanford L. Fogg*, for plaintiff.

Duties of the master: *Buzzell* v. *Laconia Mfg. Co.*, 48 Maine, 113; *Shanny* v. *Androscoggin Mills*, 66 Maine, 420, 14 Am. Enc. of Law, 843, 844; *Cunningham* v. *Bath Iron Works*, 92 Maine, 501; *Mundle* v. *Hill Mfg. Co.*, 86 Maine, 400; *Coombs* v. *New Bedford Cordage Co.*, 102 Mass. 572; *Ford* v. *Fitchburg R. R. Co.*, 110 Mass. 240; *Kelley* v. *Norcross*, 121 Mass. 508; *Killea* v. *Faxon*, 125 Mass. 485; *Elmer* v. *Locke*, 135 Mass. 575; *Lawless* v. *Connecticut River R. R. Co.*, 136 Mass. 1; *Flike* v. *Boston and Albany Railroad Co.*, 53 N. Y. 549, 13 Am. Rep. 545; *Hough* v. *Texas and Pacific R. R. Co.*, 100 U. S. 213; *Fuller* v. *Jewett*, 80 N. Y. 46, 36 Am. Rep. 575; *Taylor* v. *Evansville & Terre Haute R. R. Co.*, 121 Ind. 124;

*Moynihan* v. *Hills Co.*, 146 Mass. 586; *Brennan* v. *Gordon*, 118 N. Y. 489; *Kane* v. *Northern Central R. Co.*, 128 U. S. 951.

*Williamson* v. *Sheldon Marble Co.*, 66 Vt. 427; *Wagner* v. *Jayne Chem. Co.*, 147 Pa. St. 475; *Rummell* v. *Dillworth*, 111 Pa. St. 343; *Ingerman* v. *Moore*, 90 Cal. 410; *Jones* v. *Florence Mining Co.*, 66 Wis. 268, 57 Am. Rep. 269; *Pantzar* v. *Tilly Foster Iron Mining Co.*, 99 N. Y. 368; *Lofrano* v. *N. Y. & Mt. Vernon Water Co.*, 55 Hun, 452; Wood's Master and Servant, pp. 177, 186-9, 681, 714, 738-9, 749, 751, 763; Whart. Neg. 215; *Myhan* v. *La. Electric Light & Power Co.*, 41 La. An. Rep. 968; Beach on Cont. Neg. 370; Wood's Master and Servant, p. 763; *Sullivan* v. *India Mfg. Co.*, 113 Mass. 396; *Finnerty* v. *Prentice*, 75 N. Y. 615; *Wheeler* v. *Wason Mfg. Co.*, 135 Mass. 297; *Hickey* v. *Taaffe*, 105 N. Y. 26; *Brennan* v. *Gordon*, 118 N. Y. 489; *Hough* v. *Texas and Pacific R. R. Co.*, 100 U. S. 213; *Lebbering* v. *Struthers Wells Co.*, 157 Pa. St. 312; *Shumway* v. *Walworth & Neville Mfg. Co.*, 98 Mich. 411; *Lafayette Bridge Co.* v. *Olsen*, 108 Fed. Rep. 335; *Louisville & N. R. Co.* v. *Miller*, 104 Fed. Rep. 124; *Felton* v. *Girardy*, 104 Fed. Rep. 127; Shear. Redf. on Neg. 185, 203; *Patterson* v. *Pittsburg, etc., R. R. Co.*, 76 Pa. St. 389; *Rummell* v. *Dillworth*, 131 Pa. St. 509.

The duty to warn inexperienced servants: Shear. & Redf. on Neg. 4th ed. 218; *Smith* v. *Peninsular Car Works*, 60 Mich. 501; *Leary* v. *B. & A. R. R. Co.*, 139 Mass. 580; *Hughes* v. *Chicago, M. & St. P. R. R. Co.*, 79 Wis. 264; *McMahon* v. *Ida Mining Co.*, 95 Wis. 308; *Jones* v. *Florence Mining Co.*, 66 Wis. 268; *McGowan* v. *La Plata Mining & Smelting Co.*, 9 Fed. Rep. 861; *Washn. & Georgetown R. R. Co.* v. *Gladmon*, 15 Wall. 401; *Grizzle* v. *Frost*, 3 Foster & F. 622; *McElligott* v. *Randolph*, 61 Conn. 157; *Hanson* v. *Ludlow Mfg. Co.*, 162 Mass. 187; *Atkins* v. *Merrick Thread Co.*, 142 Mass. 431. Corporations—Vice-Principals: *Mulcairns* v. *City of Janesville*, 67 Wis. 24; *Ford* v. *Fitchburg R. R. Co.*, 110 Mass. 241; Whart. Neg. 211, 212, 232a; *Flike* v. *Boston & Albany R. R. Co.*, 53 N. Y. 540, 549; *Kehler* v. *Schwenk*, 151 Pa. St. 505; *Sullivan* v. *India Mfg. Co.*, 113 Mass. 396; *Crispin* v. *Babbitt*, 81 N. Y. 516, 521; *Pantzar* v. *Tilly Foster Iron Mining Co.*, 99 N. Y.

368; *Rogers* v. *Ludlow Mfg. Co.*, 144 Mass. 198, 201; *Booth* v. *Boston & Albany R. R. Co.*, 73 N. Y. 38, 40; *Mann* v. *Pres. of D. & H. C. Co.*, 91 N. Y. 500; Wood on Master & Serv. 349, 350, 444; *Brennan* v. *Gordon*, 118 N. Y. 489; *Loughlin* v. *State of N. Y.* 105 N. Y. 159, 162; *Union Pacific R. R. Co.* v. *Fort*, 17 Wall. 553; *Brennan* v. *Gordon*, 118 N. Y. 489; *Kerr-Murray Mfg. Co.* v. *Hess*, 98 Fed. Rep. 56.     Fellow-servant: *Hayes* v. *Colchester Mills*, 69 Vt. 1; *Brabbits* v. *Chicago, etc., Ry. Co.*, 38 Wis. 289.

*Benj. Thompson and Joseph M. Trott*, for defendant.

The trend of authority as shown by the decisions of the various courts of the highest respectability upon which we rely, is clearly in the direction of interpreting, limiting and applying the rule in the light of the methods and understanding ordinarily prevailing among practical men, rather than from any academic or arbitrary standpoint.

Counsel cited: *Stevens* v. *Chamberlain*, 100 Fed. Rep. 378; *Hermann* v. *Port Blakely Mill Co.*, 71 Fed. Rep. 853; 2 Thompson Negligence, p. 1026, § 31; Cooley, Torts, p. 541, note 1; Wood, Ry. Law, 338; Beach Con. Neg. p. 338, § 115; *Perry* v. *Rogers*, 157 N. Y. 251; *Armour* v. *Hahn*, 111 U. S. 315; *Randall* v. *Baltimore and Ohio R. R. Co.*, 109 U. S. 478; *N. E. R. R. Co.* v. *Conroy*, 175 U. S. 323, 7 Am. Neg. Reps. 182; *Baird* v. *Reilly*, 63 U. S. C. Court App. 157, 7 Neg. Cases, 712; *Cullen* v. *Norton*, 126 N. Y. 1; *Neven* v. *Sears*, 155 Mass. 303; *Daves* v. *So. Pac. Co.*, 98 Cal. 19, 25, 26, 35 Am. St. Rep. 133; *Baron* v. *Detroit, etc., Co.*, 91 Mich. 585; *Hoar* v. *Merritt*, 62 Mich. 386; *Caniff* v. *Blanchard Nav. Co.*, 66 Mich. 638; *Russell Creek Coal Co.* v. *Wells*, 96 Va. 417; *Richmond Loc. Works* v. *Ford*, 94 Va. 640; *City of Minneapolis* v. *Lundin*, 58 Fed. Rep. 525; *Curley* v. *Huff*, reported in 5 Neg. Cases, 668; *Wilson* v. *Merry*, (L. R. 1 H. L. § 326); *Bertha Zinc Co.* v. *Martin*, 93 Va. 791; *Titus* v. *Bradford, etc., R. R. Co.*, 136 Pa. St. 618; *Schwartz* v. *Schull*, 45 W. Va. 405; *Allison Mfg. Co.* v. *McCormick*, 118 Pa. St. 519, 4 Am. St. Rep. 613; *Innes* v. *Milwaukee*, 2 Am. Neg. Rep. 782; *Henderson* v. *Williams*, 66 N. H. 405; *Houston* v. *Culver*, 88 Ga. 34; *Welch* v. *Grace*, 167 Mass. 590; *Vitto* v. *Farley*, 15 N. Y. App. Div. 229, 2 Am. Neg. Rep. 47; *Donovan* v. *Ferris*, 7 Am. Neg. Rep. 390; *Anderson* v. *Daly*

*Mining Co.,* 4 Am. Neg. Rep. 86, 87; *Mast* v. *Kern,* 5 Am. Neg. Rep. 88; *Burke* v. *Anderson,* 69 Fed. Rep. 814.

SITTING: WISWELL, C. J., WHITEHOUSE, SAVAGE, POWERS, PEABODY, SPEAR, JJ.

WISWELL, C. J.   The plaintiff was employed by the defendant, and was engaged, with a crew of men, in making excavations for the purpose of laying the foundations for a machine-shop that the defend-. ant proposed to build.   The work was being done during the winter season when the ground was frozen hard to a depth of about two feet; it was therefore necessary, in making these excavations, to use some explosive, and dynamite was used for that purpose.   On the day preceding the accident to the plaintiff, four holes had been drilled in the frozen ground several feet apart, and one whole cartridge of dynamite, some eight inches in length, and a short piece of cartridge, two or three inches in length, were inserted in each hole, the whole cartridge being placed upon top of the smaller one, and was to be discharged by means of a fuse with which it was connected; the lower piece of cartridge was not connected with the fuse but was intended to be exploded by the concussion caused by the explosion of the upper cartridge.   The charges in the four holes were then all attempted to be fired at the same time, and it was supposed at the time that all of the charges of dynamite were exploded upon this occasion, but subsequent developments show that this was not so. The next morning the foreman in charge of the crew directed the plaintiff to go to work with his pick and shovel removing the earth that had been loosened by the explosion of the day before; while so at work an explosion occurred causing the plaintiff great injury.   It is fairly to be inferred that the explosion which did this injury was of a fragment of a dynamite cartridge placed in the ground in the course of blasting the day before, and which had not exploded with the rest.

The plaintiff was a common laborer and was so employed upon this occasion.   He knew that dynamite was being used in the work of making the excavations of the frozen earth, and had a general knowledge, from his experience while at work in this place, of its

powerful explosive character, but he had no information in regard to any particular dangers of this explosive, or of any means to be adopted to avoid such dangers, and was not aware and had no reason to apprehend that any dynamite was in fact left, or was liable to be left, unexploded. No instructions were given him in regard to the care to be observed by him, in his work of removing the pieces of frozen earth, to see that no pieces of the cartridges had been left unexploded.

The plaintiff claims that the defendant is liable to compensate him for the injuries sustained by him because of negligence upon its part or upon the part of its servants for whom it was responsible. He also claims that the defendant was in fault, and on that account liable to him, in not giving him the necessary information in regard to the dangers to be apprehended from the use of dynamite, and the manner to avoid them. The trial of the case resulted in a verdict for the plaintiff.

So far as the first proposition is concerned, for the reasons briefly stated below, we do not consider it necessary to enter into a discussion of the principles, so frequently stated by this court, relative to the respective duties and obligations of master and servant, ordinarily existing. The defendant, so far as the evidence shows, properly performed the duty imposed by law upon it, by exercising reasonable diligence in providing a safe and suitable place for the plaintiff to work, and in furnishing proper appliances, when properly and intelligently used, to work with. There were no concealed dangers, and, in fact, no dangers at all in the place where the plaintiff and his co-laborers were set to work when the work of blasting first commenced. It does not appear that the explosive used was defective or unsuitable, and there is no objection to the use of dynamite in making such excavations as these, provided all reasonably proper and safe precautions are used, and when those who are entrusted with its use, and those who may be exposed to danger thereby, have the necessary information in relation to its particular dangers so that such dangers may be avoided, or so that a servant may be able to intelligently determine as to whether or not he will accept the employment with its consequent dangers.

It seems evident from a careful examination of the case that the immediate negligence which caused the unexpected explosion was the failure to make such an examination, after the intended explosion of the preceding day, as was necessary to ascertain if any of these pieces of dynamite were left in the ground unexploded. It is true, that because of the failure to make this examination, when the plaintiff went to work on the next morning, the place was unsafe, but this negligence whereby the place became unsafe, it having been a proper and suitable place when the work of excavating first commenced, was the negligence of those engaged in the operation, that is, negligence of some fellow-servant of the plaintiff, a negligence which the plaintiff assumed when he entered into this employment, under the well settled doctrine of this State. Even if this failure to do what was necessary in this particular was the negligence of the foreman who had the immediate charge of the work and control of the crew there engaged, it was still the negligence of a fellow-servant, because although the foreman was in immediate charge of the work, and was superior in rank to the plaintiff, he was still a fellow-servant with the plaintiff, and in the performance of the duties entrusted to him, he was not engaged in the discharge of the particular and personal duties which the master owes to his servants, and which he cannot delegate to another so as to be relieved from liability. He was not, while in charge of this work, a vice-principal acting in the place of his principal, for the reasons frequently stated in previous decisions of this court. See *Small* v. *Allington & Curtis Manufacturing Company*, 94 Maine, 551.

So that, if the decision of this case depended upon the question as to whose negligence immediately caused the explosion and the consequent injury to the plaintiff, and if there was no other alleged failure upon the part of the defendant to perform a duty which it owed to the plaintiff, we should be constrained to hold that the verdict for the plaintiff was not warranted by the evidence. But this is not the only, nor, perhaps, the principal fault of the defendant that the plaintiff relies upon, and we do not think that these well settled principles which we have referred to relative to the negligence of a fellow-servant, and as to when and under what circumstances a

superior servant is still a fellow-servant of the one injured, are decisive of the case.

It is undoubtedly true that an employer of laborers may, when necessary for the prosecution of his work, use agencies and appliances which are particularly dangerous to the lives and limbs of those who use them, provided precautions can be and are taken to guard against such dangers, so that by the employment of these precautions the necessary and inherent dangers are reduced to a condition of reasonable safety, and unnecessary dangers can be avoided. It is, of course, true that under these circumstances employers are required to exercise great care because of the corresponding great danger to those who are exposed.

And an additional duty, one that is to be particularly considered here, is imposed upon an employer who finds it necessary to adopt the use of particularly hazardous agencies and appliances, of giving full information to his servant, who does not already have that information, of the particular dangers arising from the use of such extraordinarily hazardous agencies, and sufficient instructions to enable him to intelligently determine whether or not he will accept the dangerous employment, and, if he does, that he may know how to avoid them by the exercise of due care upon his part.

We quote from and refer to a few of the many cases wherein this well recognized principle has been stated. In *Mather* v. *Rillston*, 156 U. S. 391, it was said by the court: "So, too, if persons engaged in dangerous occupations are not informed of the accompanying dangers by the promoters thereof, or by the employers of laborers thereon, and such laborers remain in ignorance of the dangers and suffer in consequence, the employers will also be chargeable for the injuries sustained." In *Leary* v. *Boston & Albany Railroad Company*, 139 Mass. 580, 52 Am. Rep. 733, this is the language used: "Where an employer knows the danger to which his servant will be exposed in the performance of any labor to which he assigns him, and does not give him sufficient and reasonable notice thereof, its dangers not being obvious, and the servant, without negligence on his part, through inexperience, or through reliance on the directions given, fails to perceive or understand the risk, and is injured, the

employer is responsible." In *O'Connor* v. *Adams*, 120 Mass, 427, it was said: "Upon a careful examination of the report, the court is of opinion that there was evidence tending to show that the defendants' agents put the plaintiff in a place of peculiar danger, of which he had no knowledge or experience, without informing him of the risks, or instructing him how to avoid them. That question was proper to be submitted to the jury." In *Wheeler* v. *Wason Manufacturing Company*, 135 Mass. 294, the court said: "We are of opinion that the duty resting upon the master is not merely one of reasonable care and diligence to give a proper notice; but that he is responsible in case the servant suffers through a want of receiving a proper notice of the risks to which he is exposed. The servant does not assume, and is not to bear the risk of, unknown and undisclosed perils." This court in *Wormell* v. *Maine Central Railroad Company*, 79 Maine, 397, 405, 1 Am. St. Rep. 321, thus stated the doctrine: "Moreover, the law implies that where there are special risks in an employment of which the servant is not cognizant, or which are not patent in the work, it is the duty of the master to notify him of such risks; and on failure of such notice if the servant, being in the exercise of due care himself, receives injury by exposure to such risks, he is entitled to recover from the master whenever the master knew or ought to have known of such risks."

This doctrine is based upon the preliminary one that a servant who enters into the employment of another only assumes the risk of such dangers as are ordinarily incident to the employment and such unnecessary dangers as he knows of and appreciates. *Mundle* v. *Hill Manufacturing Company*, 86 Maine, 400. But the doctrine of assumption of risks has no application to dangers which are not and should not be contemplated by the servant, and certainly does not apply when there is an extraordinary risk of which the servant has no knowledge or warning. See *Burke* v. *Anderson*, 69 Fed. Rep. 814, 16 C. C. A. 442. Moreover this duty of giving notice to a servant of such perils is one that cannot be delegated by the master to another so as to escape liability if the notice is not given. So that, while in the ordinary work of making these excavations the foreman was a fellow-servant of the plaintiff, still, if the duty to inform the

laborers of the unusual and peculiarly hazardous dangers arising from the use of dynamite that was adopted, was delegated to the foreman, and he failed to give such information and instruction as were necessary, it would be the fault of the employer.

We think that there was sufficient evidence to authorize the jury in finding that the defendant failed to perform this duty. There was evidence to the effect that when a number of charges of dynamite, placed in different holes, are attempted to be all fired by fuses at the same time, there is a liability, well known to those having experience · in the use of dynamite, that some of these charges, for various reasons, will not always explode; and that this is not merely a remote possibility of so unusual an occurrence as not to be reasonably anticipated, but something so liable to occur that care must be taken after every explosion to see that none of the charges were left unexploded, and that this was especially necessary in view of the great danger that a workman might strike one of these unexploded pieces with his pickaxe or shovel. There may also have been some danger from the fact that one whole cartridge and a piece of another cartridge were placed in the same hole, the whole cartridge being the only one connected by a fuse. One of the witnesses at least, who had had special experience and knowledge upon this subject, testified that if dirt got between the connected cartridge and the unconnected piece, there was a liability of the latter not being fired by the explosion of the former. It is evident in this case that all of the dynamite used in the blasting of the preceding day was not exploded, because in addition to the piece that probably did the injury to the plaintiff, the foreman of the crew after this accident found still another unexploded piece of cartridge, rather a strong commentary upon the necessity of careful examination after each firing of the blast.

But as to these dangers, if they in fact existed, no information or instructions whatever were given to this plaintiff. The master who used this dangerous explosive, the use of which was attended, it is claimed, with these peculiar dangers, should have known of their existence, and should have also assumed that the plaintiff, a common laborer, had no knowledge concerning them, or at least have made inquiries in relation thereto. When the plaintiff entered into this

ordinarily safe employment of picking and shovelling earth, he undoubtedly assumed the ordinary and apparent dangers that were connected with the use of dynamite, but he did not assume the risk of a peculiar danger of which he had no knowledge whatever.    If information had been given him as to these dangers and the methods of avoiding them so far as possible, it is quite possible that he might not have accepted the employment with the accompanying risks, or if he had accepted it with the necessary information, he might have exercised great care to avoid the danger, either by making himself a careful examination to ascertain if there were any unexploded pieces of dynamite left, or by seeing that some person who was competent to make this examination had done so before he placed himself in a position that was otherwise perilous.

Whether or not these dangers that have been referred to in fact existed was a question for the jury; they have decided that question in favor of the plaintiff, because the charge of the presiding justice shows that this was the principal question submitted for the determination of the jury.    This was a question of fact, peculiarly within the province of the jury, and while it is possible that we might come to a different conclusion if this question was originally submitted to our determination, we do not feel by any means certain that the finding of the jury in this respect was clearly wrong.

It cannot be seriously contended that the damages awarded by the jury for the injuries sustained by the plaintiff, the entire loss of one eye, injury to the other, more or less impairment of hearing, and other injuries of less importance, were excessive.

Various exceptions were also taken to the instructions given by the presiding justice and to his refusal to give certain requested instructions, but these exceptions have not been argued, except so far as they were necessarily involved in the motion for a new trial.    The first exception was to the refusal of the presiding justice to direct a verdict for the defendant; this of course cannot be sustained if the jury were authorized to find for the plaintiff upon any of the grounds submitted.    Certain other requested instructions were not given in the language of the requests but the charge, which is printed as a part of the case, shows that so far as necessary and material they

were given in substance, and to the instructions given, we find no ground for complaint or exception.

*Motion and exceptions overruled. Judgment on the verdict.*