Merrimack, }
July 1, 1910. }

### BLAISDELL, *Adm'r*, *v.* DAVIS PAPER CO.

Where a servant is injured by an explosion of dynamite while removing dirt which has been loosened by blasting, the question of the master's negligence is properly submitted to the jury unless it appears that he used the utmost care to detect the presence of the unexploded charge, or gave warning of the existence of the danger.

A master who takes every precaution to render a work-place safe, but fails to furnish information concerning its secret dangers which are known to him, cannot escape liability for injury to a servant resulting from the hidden peril, on the ground that such knowledge would not have enabled him to avoid the danger.

A smaller amount of evidence is sufficient to support a finding that the sole beneficiary of a fraudulent transaction participated therein than would be required if he were not interested in the subject-matter, or if the visible actor had some selfish end to serve.

CASE, to recover damages for causing the death of Percy Libby. The action is prosecuted by the statutory beneficiary, in the name of the administrator. Trial by jury (*Stone*, J., presiding) and verdict for the plaintiff. The defendant excepted to the denial of its motions for a nonsuit and the direction of a verdict in its favor, on the grounds (1) that there was no evidence of its violation of any duty owed to Libby and (2) that there was no evidence to support the plaintiff's replication of fraud in obtaining a release pleaded by the defendant. Transferred from the October term, 1909, of the superior court by *Pike*, J. There was evidence tending to prove the facts hereinafter recited.

The defendant was engaged in blasting hardpan by the use of dynamite. The holes were fired in series by a battery, and there was a possibility that one would miss fire when the others did not. In case this happened, it might be ascertained by the fact that the wires leading to the charge would not be blown out, and perhaps also by an examination of the surface of the ground. It was likely that the surface would be considerably disturbed, and traces of the results might be obliterated by trampling over the loosened earth. After a series of holes was fired, the foreman and the workmen went back into the ditch together. The men did not observe that the foreman ever made any inspection, and they at once began removing the earth with pick and shovel.

On Saturday before the accident, the foreman loaded and fired a series of holes and at once went away, leaving his assistant to do what the foreman usually did. The men continued to work

until Wednesday, when Libby struck dynamite with his pick and an explosion resulted. This happened in the location of one of the holes of the Saturday series. Libby was not familiar with the use of dynamite and was free from fault. He was never instructed or warned as to the possibility of there being unexploded dynamite in the ground they were working upon.

Libby was survived by a widow and by his father, C. M. Libby. The father represented the widow in the negotiations for a settlement. March 28, 1907, Blaisdell wrote to C. M. Libby, suggesting that the case be submitted to three arbitrators, one chosen by Libby, one by the defendant, and one by Blaisdell. He added that within a day or two the supreme court had "rendered a decision relating to just such matters and it seems favorable to corporations," and "litigations are expensive, and it might be well to proceed with caution." April 8, Libby obtained an interview with Blaisdell and Henry Davis, the latter representing the defendant. Davis said the accident was caused by a blast fired by a fellow-servant, contrary to orders, and offered $150 in settlement. Blaisdell suggested that of course the offer was not made as an admission of liability. Later in the interview Blaisdell repeated the suggestion—" shielded him again." At the close of the interview Blaisdell dismissed Libby and remained closeted with Davis. Libby had another interview with Davis a few days later and said they wished for substantial damages or nothing, and that if the offer was accepted he would inform Davis by the next Saturday. At this interview, Davis repeated the version of the accident which he gave on the former occasion. Before either interview, the defendant had investigated the accident and determined that it resulted from a failure in the Saturday blast. After the last interview, Libby saw Blaisdell and informed him that all offers were to be submitted to Libby for consideration.

May 2, Blaisdell wrote Libby that he was unable to find from any of the leading lawyers in the state anything on which to base litigation. About June 10, Libby wrote Blaisdell that if he felt it his duty to settle for the sum offered, Libby would advance the sum and proceed with the case for the benefit of the widow. August 20, Blaisdell settled with Davis for $200. Davis telephoned to Concord and had the release drawn by his counsel, although in other cases growing out of the same accident he had drawn the releases himself. The administrator tried to induce the widow to sign some paper concerning the settlement the last of May and again on August 23 or 24. She refused on each occasion, upon the ground that the offer was too small. Davis was acquainted with the beneficiary and passed her house frequently, but never mentioned the settlement to her.

When Blaisdell's deposition was taken, he denied having written most of the things contained in his letters to Libby. His explanation of his statement about the opinion of the leading lawyers upon the case was that he consulted John Kimball, a layman, who voluntered to obtain the opinion of Harry G. Sargent and later reported to Blaisdell that Sargent thought there was no liability. Both Kimball and Sargent were dead when the deposition was taken. Blaisdell never made any investigation to learn the facts as to the cause of the accident.

*Albin & Sawyer*, for the plaintiff.

*Streeter, Hollis, Demond & Woodworth*, for the defendant.

PEASLEE, J. It might be found from the evidence that the presence of dynamite at the place of the accident resulted from the failure to explode one of the series of holes loaded on Saturday, and that such an accident might have been anticipated. It might also be found that but little, if any, inspection was made after any of the series of holes was fired, to learn whether any charges of dynamite had failed to explode. In view of the extreme hazard which would be created by the presence of such an explosive in ground which a gang of men were removing with pick and shovel, it cannot be said as matter of law that it was not the master's duty to use every precaution human ingenuity could suggest, or else warn the workmen of the danger. *Mather* v. *Rillston*, 156 U. S. 391. Since it could be found the master did not act up to this standard, the question of its fault was properly submitted to the jury. " There might be a liability on the part of the defendant, . . . even though neither he nor his superintendent knew or had reason to believe that there was an unexploded charge of dynamite there. It was enough to create a liability if they knew, or ought to have known, of such a possibility or probability that some of the dynamite remained unexploded as to make an inspection necessary for the safety of the workmen." *Hooe* v. *Railway*, 187 Mass. 67.

But if it were conceded that there was not sufficient evidence of failure to use precautions to discover the danger, the fact that no information was given to Libby may of itself be a ground for recovery. Even when the master has done all that he can to make a work-place safe, he may have a further duty to perform. If there are secret dangers, the servant is entitled to be told of them. He may justly say he did not contract to enter upon so hazardous an undertaking, and that putting him to work in such a place was in effect setting a trap for him. It does not absolve

the master to show that the servant could not have avoided the danger had he known of it. He might have avoided it by not entering upon the work. *Welch* v. *Bath Iron Works*, 98 Me. 361.

" The doctrine is well settled and elementary that it is a master's duty to notify his servant of any hidden defect in the place where the latter is expected to work which increases the ordinary risks of the employment, and to advise him of any latent danger which may attend the doing of any work which the servant is called upon to perform, provided the defect or the danger in question is known to the master and is unknown to the servant. A master violates his duty and is guilty of culpable negligence whenever, without warning, he exposes his servant to a risk of injury which is not obvious and was not known to the servant, provided the master himself was either acquainted with the risk, or in the exercise of ordinary care ought to have been acquainted with it." *Gowen* v. *Bush*, 76 Fed. Rep. 349. " This is but an application to different circumstances of a rule frequently applied in cases of injuries received by a servant resulting from latent dangers in machinery ; namely, that a servant is not to be exposed without warning to latent dangers of which he knows nothing, and is not chargeable with imputed knowledge, provided the master knew, or ought to have known, of the danger." *Kliegel* v. *Aitken*, 94 Wis. 432.

If it cannot be said that all reasonable men would inform a servant of such a peril as this, neither can it be held as matter of law that the rule of reasonable conduct might not be found to embrace such action. Libby had no knowledge of the work of using dynamite, and it is conceded he was free from fault. As a practical proposition of every-day life, it would not be said that the employer who set such an uninformed servant at work in a place of so great possible peril was free from fault. The judgment of men might be that the employer's conduct was not reasonable. As such reasonable conduct was the standard of legal duty toward its servants, the defendant's motion for a nonsuit because there was no evidence of a violation or neglect of any legal duty it owed to the plaintiff's intestate was properly denied.

2. It is not open to serious question that there was abundant evidence of bad faith and double-dealing on the part of the administrator. The question is whether the evidence sufficiently connects the defendant with his conduct. As the defendant would be the sole beneficiary of such a fraud, a less amount of evidence of its participation therein would be sufficient to support a finding that it was a party thereto than in a case where the party sought to be charged was not interested in the subject-matter, or where the visible actor had himself some end of his

own to serve. It is common knowledge (*Boucher* v. *Larochelle*, 74 N. H. 433) that a man does not systematically pursue a course of deception unless there be some motive for so doing. No motive for such conduct on the part of the administrator is here shown, unless there was a scheme in which the defendant participated; and from the nature of the case there could be no scheme or design wherein the defendant and administrator were arrayed against the beneficiary which would not at least be open to suspicion.

There was evidence that at the first interview between C. M. Libby, Blaisdell, and Davis, Davis falsely represented the cause of the accident to have been a forbidden act of a fellow-servant; that when he made an offer of a settlement for a nominal sum, the administrator suggested that of course the offer was not made as an admission of liability; that Libby stated plainly that they should have substantial damages or nothing; that Davis and Blaisdell remained in consultation after Libby left; that in the subsequent negotiations Davis never spoke to the beneficiary, whom he knew and whose house he passed frequently; and that when the settlement was made he telephoned to Concord and had the release drawn by his counsel, whereas in other settlements of claims growing out of this accident he drew the releases himself. If this evidence was believed, it showed motive, fraudulent statements, coöperation, concealment, and unusual precautionary measures. There is in these facts enough to warrant the submission of this issue to the jury. "It is not necessary to prove that all came together, and actually agreed in terms to have a common design and pursue it by common means. If it be proved that the defendants pursued by their acts the same common object, often by the same means, one performing one part and another another part of the same plan, so as to complete it with a view to the attainment of the same common result, the jury will be justified in the conclusion that they were engaged in a combination or conspiracy to effect that result." *Page* v. *Parker*, 40 N. H. 47, 67; *S. C.*, 43 N. H. 363, 366; *Dayton* v. *Monroe*, 47 Mich. 194; 3 Gr. Ev., *s.* 93.

*Exceptions overruled.*

All concurred.