CONRADSEN v. OSCEOLA CONSOLIDATED MINING CO.

MASTER AND SERVANT—NEGLIGENCE—WARNING—MINES AND MINING—DUTY TO NOTIFY SERVANT OF DANGER.

Where plaintiff was one of a crew which was sinking a winze in a copper mine, and two of the men worked in the day shift and two at night, and the duty of determining whether or not blasts consisting of several charges of dynamite had fully exploded rested upon the miners, and where it was impossible to tell from the number of explosions, which often occurred simultaneously, whether or not some of the charges remained unexploded, and it appeared from the evidence that the day shift, which preceded plaintiff at the work, had drilled seven holes and had heard two blasts, and they made an examination and believed that all the charges had been fired, but were mistaken, and plaintiff sustained injuries after making an examination of the condition in the pit, and it was not shown what information, in addition to that which plaintiff was able to learn from inspection, could have been given him by the preceding shift, which would have apprised him of the danger, or that more skillful inspectors could have been employed, a verdict should have been directed for the defendant mining corporation.[1]

Error to Houghton; O'Brien, J. Submitted January 8, 1914. (Docket No. 13.) Decided April 7, 1914.

Case by Helmer Conradsen against the Osceola Consolidated Mining Company for personal injuries. Judgment for plaintiff. Defendant brings error. Reversed; new trial denied.

*Allen F. Rees (Rees, Robinson & Petermann,* of counsel), for appellant.

*N. A. Ruonavaara (A. W. Kerr,* of counsel), for appellee.

---

[1] As to servant's assumption of risk of unexpected explosion, see 19 L. R. A. (N. S.) 360.

OSTRANDER, J. While it is alleged in the declaration that it was defendant's duty, among others, to have adopted, promulgated, and vigilantly enforced a rule for notifying miners of the condition in which the place in which they were required to work was left by miners working in the same place, on another shift, the case as made and as it was submitted to the jury, and the legal propositions presented in this court, may be gathered from that portion of the charge of the court which is here set out:

"The plaintiff has brought this suit to recover damages for personal injuries which he received while in the employ of the defendant mining company on or about the 16th day of February, 1911. He claims, and has introduced evidence tending to show: That he was working as a miner sinking a certain winze from the twenty-second level to the twenty-third level of defendant's South Kearsarge mine. That there were two shifts of men working company account and not on contract, on opposite shifts, in and about the sinking of said winze. That the plaintiff and his partner worked on one shift, and that on the other shift his opposite partners, consisting of two miners, worked in and about the work of sinking this winze downward along the vein. That, on the week when plaintiff was injured, he was working with his partner on the night shift, as I recollect the evidence. That on the preceding shift, which was the day shift, his partners on the opposite shift worked taking up a sink, as it has been called in the evidence, which is done by drilling holes in the solid ground or face of the rock at the bottom of the winze and blasting the same for the purpose of taking out a cut or taking up a sink in order to push the winze further downward. That, on the said day shift, seven holes were drilled by the opposite partners of the plaintiff, and that at the end of the shift the miners working on such shift, and who were known in the evidence as the opposite partners, blasted the seven holes. That, in and about the business of blasting holes in that mine, dynamite, fuse, and caps are used. That the fuses by which the holes are fired or exploded are usually, as in this place and at that time, cut in different lengths for the pur-

pose of exploding the holes in succession. That the holes are then exploded or blasted by firing the fuse, which explodes a primer or cap contained in the dynamite or in one of the sticks, and is supposed to explode the charge of dynamite. That sometimes as many reports or blasts are heard as the number of holes drilled and attempted to be blasted, and sometimes a less number of reports are heard, varying from one or two to any number less than the full number of blasts or attempts at blasting holes. The plaintiff further claims, and has introduced evidence tending to show, that, when a less number of reports are heard in blasting under such conditions as existed in that winze, it was the duty of the miners so doing the blasting to so report the fact, that there were a less number of explosions or reports heard by them, to the men coming on to work on the succeeding shift, or to the shift boss, so that the latter could see that timely warning and notice thereof would be given to the succeeding shift unless such miners so doing the blasting had satisfied themselves that there were no missed holes or unexploded blast, by means of a careful inspection, investigation, or examination of the premises subsequent to the firing of the holes.

"The plaintiff claims: That, on the day shift immediately preceding the night of his injuries, his opposite partners drilled and attempted to blast seven holes in making a sink in the bottom of the winze where plaintiff was employed. That, when said blast was made, the miners who were doing the blasting heard only two reports. That such miners, after a reasonable time had expired, looked over and investigated said winze, but were not able to satisfy themselves that either there was or that there was not a missed hole; it being the claim of the defendant, however, that such miners did satisfy themselves that there were no missed holes. That thereupon it became the duty of such miners to report that fact that they heard only two reports to the plaintiff, or to the shift boss, so that it would be eventually reported to the plaintiff, who would and did come to work on the succeeding shift, of the possible existence of missed holes or unexploded powder in the bottom of that winze. That the plaintiff's partners on the other shift (that is, the miners who were doing the blasting, as

aforesaid) failed to notify him or send him word or warning to the effect that only two explosions were heard, and that plaintiff went to his place of work without any knowledge of the existence of any unexploded dynamite in the bottom of the winze, and while exercising due and ordinary care for his own safety, and without having assumed the risk, he and his partner drilled into unexploded dynamite then and there in the bottom of the winze, which thereby caused an explosion, as a result of which the plaintiff received the injuries of which he complains in this case.

"That is substantially the claims of the plaintiff in this case. And, furthermore, the plaintiff claims: That his injuries so received are a result of negligence on the part of the men working on the opposite shift in failing to notify him that only two reports were heard, and failing to warn him of the possibility of the existence of unexploded dynamite in the winze, and that the defendant is responsible for the negligence of the miners on the opposite shift. That there was no want of ordinary care on the part of the plaintiff which contributed proximately to his injuries, and that the injuries which resulted to him were not assumed by him and were not and are not one of the inherent risks of the service which he assumed in entering upon and continuing in the employment of the defendant.

"On the other hand, the defendant claims: That there was no negligence on the part of the defendant. That the miners on the other shift satisfied themselves, from an examination and investigation of the situation in the bottom of the winze after the blasting, on the day shift, that there was no missed hole or unexploded dynamite in the winze. That the inspection and investigation which they made was the usual, reasonable, and ordinary investigation that would be made under such conditions, and that by reason thereof the miners working on the day shift became perfectly satisfied that there was no missed hole in that winze or any unexploded dynamite, and that therefore there was no occasion on their part and no duty to warn the partners who would succeed them, the plaintiff and his partner, or to warn the shift boss, of the existence or possible existence of any unexploded dynamite in the bottom of the winze.

"The defendant denies that it was the custom under the conditions which obtained in that winze, and especially in making a sink and taking up a sink, as they express it, to depend upon the number of reports to determine whether there was any unexploded dynamite left after the blasting, and that such number of blasts was no evidence either one way or the other as to what had occurred with reference to missed holes or the existence of unexploded dynamite.

"The defendant further claims that the miners, even if they did neglect their duty in this case, are fellow-servants of the plaintiff, for whose neglect they are not responsible in this case. The defendant also claims that the risks, under the circumstances of this case, of unexploded dynamite in the winze, from which the plaintiff was injured, was one of the inherent and ordinary risks of the service which he assumed and entered upon when he went into the employment of the defendant, and for which the defendant in law is not responsible. The defendant also claims that, if there was any negligence on the part of the defendant or upon the part of any one for whom the defendant is responsible, there was also negligence on the part of the plaintiff himself in not making a sufficient examination of the premises in the bottom of the winze before he went to work, in order to determine for himself whether or not there was any missed holes or unexploded dynamite in the bottom of that winze, and the defendant therefore denies any liability to the plaintiff, and claims that it should recover a verdict in this case, by reason of any and all of those claims.

"Now, you have heard, gentlemen of the jury, the claims of the parties as near as the court can recollect them, and the first question for you to determine will be whether or not there is any negligence on the part of the defendant which caused the injuries to the plaintiff in this case. Negligence is usually defined as the failure to exercise ordinary care under the circumstances. That is, the failure to exercise such a degree of care for the safety of another as a reasonably prudent person would have exercised under like conditions and circumstances.

"Now, as you have already heard, the claim of negligence made by the plaintiff in this case is that the

defendant has failed to warn and notify the plaintiff of the existence or possible existence of missed holes or unexploded dynamite in the bottom of that winze before he went to work there on that night shift that he was injured. The plaintiff claims it was the duty of the defendant to have warned him of its existence, if you have found that it did exist, of missed holes or unexploded dynamite in the bottom of the winze; and the plaintiff claims it was the custom in that mine for men who were going to work to rely upon the opposite shift, the men who had worked upon the preceding shift, to give that warning, if the men working on the preceding shift had reasonable opportunity to become aware that missed holes or unexploded dynamite was existing, or liable to exist, in the premises where the succeeding shift was to come on to work, and that that custom was applicable to this case and to the circumstances of this case; and the plaintiff further claims that, when the number of reports were not heard equivalent to the number of holes attempted to be exploded, that was evidence from which the men doing the blasting should have determined that there was a possibility of missed holes, and the fact that a less number of explosions were heard than the number of holes attempted to be blasted should have been brought home to the knowledge of the men on the succeeding shift, and that that custom has application to the facts in this case.

"I say to you, gentlemen, if you find by a fair preponderance of the evidence that such custom existed, then it will be your duty to say that the defendant was guilty of negligence in failing to give the plaintiff warning that there was a possibility of missed holes or unexploded dynamite in that winze prior to his going to work on that night shift, and it makes no difference whether it was the duty of the men working on the preceding shift to give that warning, or the shift boss. He was not a fellow-servant of the plaintiff; he was an agent of the defendant, and for whose neglect in that regard the defendant would be liable in this case; and it will be for you to determine whether there was such a custom or not prevailing in that mine. It is denied by the defendant, and you have to find by a fair preponderance of the evidence,

as I outlined it to you and as claimed by the plaintiff, whether it existed, and that it was applicable to the conditions pertaining in that winze. It would not make any difference whether the custom existed in other conditions in the mine, if it did not exist and was not applicable to the conditions prevailing in that winze at the time the blasting was done and at the time the plaintiff went to work succeeding the blasting on the next shift. If you find that such custom existed by a fair preponderance of the evidence, then proceed to the next step in the case. If you do not find such custom, then I charge you it is your duty to render a verdict for the defendant; you need not consider any other question in the case. If you do find that such custom existed, then you may proceed to determine whether or not, if that warning had been given, the plaintiff in this case would have been in any better position. In other words, would it have prevented the injury which occurred? Would it have prevented the explosion in the winze at that time? If you further find that, if the plaintiff had that warning and knew that there was a less number of blasts reported than had attempted to be exploded, it would have prevented his injuries, if you find that to be a fact, then, gentlemen of the jury, you can say, and it will be your duty to determine, then, as a matter of fact, that the negligence of the defendant was the proximate cause of the injury to the plaintiff; and if you have not so determined that, even had such a custom existed, it would have done the plaintiff any good had he got that notice, then you should find for the defendant."

The jury returned a verdict for plaintiff, upon which judgment was entered. Defendant at the close of plaintiff's proofs, and when all proofs were concluded, asked for a peremptory instruction in its favor. The grounds of the motion were: (1) There is no proof of the custom or duty relied on by plaintiff. There is no proof of any negligent fault or failure of the miners who worked on the opposite shift with respect to any duty or custom. (2) Assuming there was a duty resting upon the miners in the opposite

shift and a default on their part, it was the fault of fellow-servants of plaintiff.

Errors are assigned which raise other questions, but the argument of counsel for appellant is directed principally to the propositions just stated. On the other hand, after a quotation of testimony from the record, counsel for appellee admirably and concisely state their position as follows:

"We cite this testimony merely for the purpose of showing that at least there was some evidence before the court and before the jury which tended to show that there was a custom that it was the only means of protection furnished the plaintiff or people in a like situation; that this was known, or must have been known, to the defendant; and that it was evidence upon which a jury could base its verdict, and evidence which it is the duty of the jury to pass upon under the proper instructions of the court. It cannot be brushed aside merely with the statement that there is no evidence in the case.

"There was undoubtedly some testimony in the case showing the practice or custom among the miners with regard to submitting information relative to the conditions of the missed holes, and so on. As long as the defendant required work of the extremely hazardous character of that performed by the plaintiff in this case, and did not choose to provide a system of rules and a system of inspection looking to the protection of its men, but acquiesced in the custom or practice, loose as it might be, which the men themselves had established, it is bound by that custom. It cannot, because it failed to provide a more perfect method than it had permitted the men to work. out for themselves, be heard to say that they are absolved from all duty because the men did work out some system, though a crude one.

"There is hardly any ground for argument that the defendant company owed the plaintiff the duty to warn him of the latent danger in the place in which he was to work. If there had been any doubt on this ground, it was settled in the case of *Panela* v. *Castile Mining Co.*, opinion dated December 20, 1913 [177 Mich. 669]. A reading of that opinion renders the

citation of other authorities on this proposition unnecessary.

"The appellant's second contention, viz., that the negligence in this case, if any is to be imputed to any one, was that of a fellow-servant, is completely disposed of by the case of *Panela* v. *Castile Mining Co.* The duty claimed by the plaintiff in the case at bar is exactly the duty placed upon the shift boss in the case of *Panela* v. *Castile Mining Co.*, and it is there held by the court that the duty to give this warning was the nondelegable duty of the master. * * *

"It was held in *Panela* v. *Mining Co.*, 165 Mich. 336 [130. N. W. 689], that it was the duty of the defendant to warn plaintiff if the members of another crew left explosives in the shaft. The court said:

"'All crews used explosives. It was the duty of defendant to notify plaintiff if the members of another crew left explosives in the shaft, because, if such notification was not given, there would exist an unknown, and perhaps undiscoverable, hazard to which plaintiff should not be exposed. This is the reasonable meaning.'"

We are referred by appellee also to *Shannon* v. *Mining Co.*, 24 Wash. 119 (64 Pac. 169); *McMillan* v. *Mining Co.*, 32 Wash. 579 (73 Pac. 685, 98 Am. St. Rep. 908); *Blaisdell* v. *Paper Co.*, 75 N. H. 497 (77 Atl. 485, 139 Am. St. Rep. 735); *Coffeyville, etc., Tile Co.* v. *Shanks*, 69 Kan. 306 (76 Pac. 856). The case of *Panela* v. *Mining Co.*, reported in 165 Mich. 329 (130 N. W. 686, 144 N. W. 528), is not decisive of the case at bar. The case was here first on error to review an order sustaining a demurrer to. the declaration, and we found in it averments sufficient in form and substance to require the admission of testimony. In an analysis of the language employed in the declaration, the issues presented were stated. No rule of law affecting the duty of the defendant was announced, and the last sentence of the quotation from the opinion, found in appellee's brief and above set out, does not appear in the opinion. What the court said was, "This is the reasonable meaning," referring

to the language of the declaration, and it did not say, as counsel have made it appear, "This is the general rule." Upon the second appearance of the case in this court, after a trial in the court below, where a verdict for defendant had been directed, there was presented the question whether, viewing the testimony in a light most favorable to plaintiff, there were issues of fact for a jury. A statement of facts is incorporated in the opinion, and among them the one that:

"The duty of so warning them [the men] was imposed by defendant on the foreman of each crew. It was customary to so give such warning where there were several crews working at the same place."

In other respects, the facts which in that case the testimony offered by the plaintiff tended to prove were vitally different from the testimony offered in the case at bar. And it was not decided that the master owed to the miners the nondelegable duty to warn them of unexploded dynamite left in the mine by fellow miners working on another shift. It is true that four of the justices, resting the duty upon the doctrine of the rule of safe place, were of opinion that it was nondelegable. But only four of the justices agreed to the conclusion. Nor are the other cases cited by appellee controlling here, as an examination of them will discover.

The facts shown by the record are simple, and not disputed, and, briefly stated, they are as follows: Four experienced miners were employed by defendant in sinking a winze, 4 by 4½ or 5 feet in size, in rock. Two of them worked on the day, and two on the night, shift. These men did the drilling, blasting, and cleaning out of the winze as they proceeded. They had been at the particular work for some weeks, and had proceeded more than 30 feet into the rock. Having squared up the sides and leveled the floor, the miners on the day shift had drilled in the rock 7 holes

from 5 to 6 feet in length and an inch and a half in diameter. One of these holes was substantially in the center of a circle made by the other 6; the diameter of the circle being perhaps 14 or 15 inches. The center hole was drilled vertically into the rock, the others at an angle; the rock within the drill holes being roughly in form a cone. That is, in making the six holes, the drills were so directed as to gradually approach the center of the circle; one hole sometimes intersecting another or others. Into the seven drill holes dynamite was introduced, the fuses lighted, the men left the pit, and the action of the explosion, if the desired result was accomplished, was to break up, so that it could be removed, the rock inside the drill holes.

Thereafter drilling and blasting proceeded both from above and from the inside of the opening thus made until the rock inside the walls of the winze had been removed. In this way the process was repeated. But while seven caps and seven fuses were used, one to each drill hole, and were cut and fired in such a way as if further removed from each other, to produce a series of explosions, the charges of dynamite were so close to each other that in fact one explosion was all that sometimes could be heard, two or more at other times. The fact that a less number than seven explosions could be counted was not evidence that any charge remained unexploded. All of these miners knew this. Sometimes, and it was true on the particular occasion, the explosion will break up the rock inside the circle of drill holes, but will not lift or blow it out of the hole. It will be, and in this case it was, left, except for a few inches at the collar, or stop, so closely packed that another blast was required to loosen it. Whether, in such a case, below the surface of what remained in the hole there is unexploded dynamite may and may not be discoverable. Sometimes, perhaps most of the time, the results of a blast

were left in the pit to be cleaned out by the men in the oncoming shift. They take conditions as they find them, with such warning as the outgoing shift may leave for them, make such examination as they choose, and go on with the work. In short, the miners are the men upon whom rests the duty to do all that is required to be done about the matter. It does not appear that more skillful inspectors can be employed. Upon the particular occasion the miners who set off the blast went back into the pit, after hearing two explosions, made an examination, satisfied themselves that all of the charges had exploded, and quit work. They were mistaken. But it does not appear that any one could have been more certain. The plaintiff and his companion, coming to work, saw the conditions. They did not know whether the other miners had been able to hear one or more explosions. They could see and understand everything else that the others could have told them. They knew how the drilling had been done; they saw the hole plugged with material; they knew what such examination as could be made disclosed. They had precisely the same information that the miners on the outgoing shift had, except the information that but two explosions had been heard. But that information, as has been stated, would not be evidence that all of the charges had, or that they had not, been exploded. And it was a part of plaintiff's knowledge, derived from his experience, that it was unlikely that there had been seven or any considerable number of explosions. It is not perceived how anything that defendant or the miners on the preceding shift could have told plaintiff would have improved his situation. What those miners saw, he could see. Such inspection as they might have made, he could make.

It does not appear that the method of excavating rock pursued was not an approved and wholly proper

method. Unless, then, we are to hold, as matter of · law, that the defendant owed to plaintiff the duty to discover and notify him that there was unexploded dynamite in this rock, there is no evidence of any negligence on the part of defendant or on the part of the miners who did the blasting. We find neither authority nor reason for such a ruling. We may go further and say there is in this record no evidence of a custom of miners to notify other miners of the possible existence of unexploded dynamite where work such as plaintiff was doing is carried on. At best, the evidence is that, when the miners who set off the blast discovered or believed such a condition existed, they were in the habit of giving notice of it. Where mining for ore was carried on, and holes for dynamite were drilled at various distances from each other from a foot and a half to greater distances, a series of explosions was expected, and miners were able to count them, and thus learn whether all of the charges had been exploded. We are not here dealing with such a case.

The judgment is reversed, and, as it does not appear that any rule which defendant could formulate and enforce would have better protected plaintiff under the circumstances, no new trial will be granted.

MCALVAY, C. J., and BROOKE, KUHN, STONE, BIRD, MOORE, and STEERE, JJ., concurred.