## FRED A. JONES CO. v. DRAKE.

(Court of Civil Appeals of Texas. Dallas. June 14, 1913. Rehearing Denied June 28, 1913.)

1. MASTER AND SERVANT (§ 258*)—INJURIES TO SERVANT—ACTION—PLEADING.

In an action against a master for injuries received by a servant owing to an explosion of dynamite, the petition which averred that the master was guilty of negligence proximately causing plaintiff's injury in permitting sticks of dynamite to be carried on his premises, capped and primed in an uncovered box which subjected the dynamite to various dangers which might have caused the explosion, and that the master by the exercise of ordinary care should have known that the use of the dynamite was dangerous, sufficiently states a cause of action, not leaving the proximate cause of the accident open to mere guesswork and conjecture, even though showing that the explosion might have been caused from several sources, for the circumstances attending an injury may be sufficient to establish the fact of negligence without any direct proof thereof; and it was the duty of the master, because of the hazardous nature of the explosive, to use increased watchfulness and greater caution in proportion to the hazard.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 816–836; Dec. Dig. § 258.*]

2. MASTER AND SERVANT (§§ 101, 102*)—INJURIES TO SERVANT—DUTY OF CARE.

In using a dangerous agency, such as dynamite, a master is bound in the exercise of reasonable care to use greater watchfulness and caution in proportion to the danger.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 135, 171, 174, 178–184, 192; Dec. Dig. §§ 101, 102.*]

3. MASTER AND SERVANT (§ 276*)—INJURIES TO SERVANT — ACTIONS — EVIDENCE — SUFFICIENCY.

In an action against a master for injuries received by a servant, evidence *held* sufficient to show that the negligence of the master in permitting dynamite to be carried around already capped and primed and in an open box was the proximate cause of the accident.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 950–952, 954, 959, 970, 976; Dec. Dig. § 276.*]

4. TRIAL (§ 260*) — INSTRUCTIONS — REFUSAL OF CHARGES GIVEN.

Where a requested charge is covered by those already given its refusal is proper, for the giving would constitute undue repetition.

[Ed. Note.—For other cases, see Trial, Cent. Dig. §§ 651–659; Dec. Dig. § 260.*]

5. TRIAL (§ 252*)—INSTRUCTIONS—EVIDENCE.

In an action against a master for injuries by an explosion of dynamite, where the evidence was sufficient to show that the injury was caused by the master's negligence in permitting the explosive to be carried around already capped and primed in an open box, but did not disclose the exact reason for the explosion, the refusal of a special charge authorizing a verdict for the defendant if the jury could not determine what caused the explosion is proper.

[Ed. Note.—For other cases, see Trial, Cent. Dig. §§ 505, 596–612; Dec. Dig. § 252.*]

6. APPEAL AND ERROR (§ 973*) — REVIEW — DISCRETION OF TRIAL COURT.

The exclusion of testimony upon the motion of the defendant before the introduction of its evidence rests largely within the discretion

---

*For other cases see same topic and section NUMBER in Dec. Dig. & Am. Dig. Key-No. Series & Rep'r Indexes

of the trial court, and its action is not reviewable in the absence of a showing of an abuse of its discretion.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. § 3846; Dec. Dig. § 973.*]

7. APPEAL AND ERROR (§ 1047*) — REVIEW — HARMLESS ERROR.

The refusal of the court to strike testimony as to the authority of two of the master's servants to hire and discharge others is harmless though erroneous, where the evidence conclusively showed that one of the servants was a vice principal and the court charged that the other was a fellow servant.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 4132, 4133, 4146–4152; Dec. Dig. § 1047.*]

Appeal from District Court, Dallas County; J. C. Roberts, Judge.

Action by Charlie Drake against the Fred A. Jones Company. From a judgment for plaintiff, defendant appeals. Affirmed.

Seay & Seay, of Dallas, for appellant. Ben Savage, Geo. O. Wallace, and Carden, Starling, Carden & Hemphill, all of Dallas, for appellee.

TALBOT, J. This is an action brought by appellee against appellant to recover damages sustained by him in consequence of personal injuries inflicted through the negligence of appellant's servants. Plaintiff's petition alleges, in substance, ·that on or about January 21, 1911, the defendant, a private corporation, was engaged in constructing for the city of Dallas, Tex., a large water reservoir, known as "White Rock Reservoir," and plaintiff, as an, employé of defendant, was assisting in doing the work. That the defendant, acting through its officers and representatives, was guilty of negligence in that it caused certain dynamite to be used in and about the premises where plaintiff was required to work, and recklessly and carelessly caused and permitted said dynamite to be handled and used by inexperienced and incompetent employés, who did not exercise that degree of care in respect thereto which a person of ordinary prudence would have exercised under the same circumstances to avoid an explosion and did not warn plaintiff of the danger of said dynamite exploding under such circumstances, by reason of which an explosion thereof occurred proximately resulting in serious and permanent injury to plaintiff. As to the manner of handling said dynamite and the circumstances surrounding and attending its explosion, it is alleged:

"That the defendant, through its vice principal, who was plaintiff's foreman, had ordered one Jaredo to do or cause to be done certain work in connection with the removing of certain stumps the exact nature of such work not being known to plaintiff, but that plaintiff has been informed, believes, and charges the fact to be that the said work was to make certain excavations under the stumps, and to place small pieces of dynamite thereunder and discharge the same so as to loosen the earth from under said stumps, the said process being generally known as springing the stumps, so that after the springing of the stumps defendant could recharge the cavity created thereby with a larger quantity of dynamite, which, upon explosion, would remove and destroy the stumps. That said vice principal inserted or caused to be inserted, or knew that there had been inserted, or by the exercise of ordinary care should have known that there had been inserted in the said pieces of said dynamite dynamite caps and fuses, and placed or caused to be placed the said dynamite so capped and primed, together with a number of loose caps, in an uncovered box, and in this condition placed or caused to be placed the said uncovered box of said dynamite in the possession of and under the control of the said Jaredo, or allowed the said Jaredo to have and retain possession of an uncovered box containing loose caps and dynamite so primed, or by the exercise of ordinary care could have known that the said Jaredo, in the discharge of his duties to defendant, undertook to spring said stumps by use of said dynamite in the manner as above set out. That the vice principal of defendant ordered and directed plaintiff to assist the said Jaredo in such work, and commanded and directed him to obey the orders and commands of the said Jaredo. * * * That in acting in obedience to the orders and instructions of the said Jaredo a hole had been bored under one of said stumps, and the said Jaredo had placed a small piece of dynamite thereunder and exploded the same, thereby springing such stump. That the said Jaredo thereupon ordered him, plaintiff, to remove the loose dirt from under said stump and enlarge the cavity so that a larger charge of dynamite could be placed thereunder, and said stump thereby removed when said dynamite was discharged. That thereafter the said Jaredo went to another stump some distance away and ordered and directed plaintiff to come to such other stump, that plaintiff, in obedience to said order and command of the said Jaredo, after completing said work at said first-mentioned stump, left such place of safety and started to the other stump where the said Jaredo had ordered him to come, and that just before plaintiff arrived at such stump the said dynamite in said box exploded and injured plaintiff.

"Plaintiff further alleges: That the said place of explosion was at or near the foot of White Rock Dam, and in a northwesterly direction therefrom, which said dam was then in the process of construction. That upon the top of said dam there was being run back and forth a steam roller or steam engine, from which sparks were blowing in the direction where the said Jaredo was at work at said stump, and where said explosion occurred. That the said dynamite was

---

caused to explode either on account of some jar or concussion, or from the explosion of a piece of dynamite placed by the said Jaredo under said stump for the purpose of springing it—the said box of dynamite being left in close proximity thereto—or from sparks from said engine or roller lighting in said box, or from some other cause. That plaintiff is unable to aver specifically which of said causes produced said explosion, but charges that the defendant was negligent whether said explosion occurred from either of said causes; and that the capping and priming of said dynamite, as above alleged, or in causing the same to be capped and primed, or in permitting the same to be capped and primed, or in failing to exercise ordinary care to prevent the premature capping and priming, or permitting said caps to be in the same box with said dynamite, or in placing or permitting said caps to be placed in the said box with said dynamite, and its placing or causing to be placed, or in permitting to be placed, or in failing to exercise ordinary care to prevent its being placed in said open box, and the said box placed in such close proximity to said engine and the said stump or permitting the said box containing said capped and primed dynamite from being jolted or jarred and prematurely discharged, or in failing to exercise ordinary care to prevent any or all of the conditions aforesaid leading to the premature discharge of the said dynamite as aforesaid and in failing to warn and caution plaintiff from approaching said place, and of being in said vicinity where said dynamite was so capped and primed and in such condition as to be liable to explode, was guilty of negligence. That the defendant was further guilty of negligence in that the said Jaredo, while doing his said work at said stump, left the said box containing said caps and dynamite capped and primed as aforesaid with the fuses therein upon the ground near his said work, and that the defendant and its said vice principal knew, or in the exercise of ordinary care should have known, that the said Jaredo would so leave said dynamite and the box and its said contents in such close proximity to his work, and that the defendant should have foreseen, or by the exercise of ordinary care could have foreseen, that the said Jaredo would place and leave said dynamite and box in such close proximity, and that the plaintiff, in obeying the orders of the said Jaredo, and in approaching said stump that he might discharge his duties to defendant, and in obedience to said orders, would come in dangerous proximity to said dynamite so placed and located, and that an explosion thereof would injure plaintiff, and in the exercise of ordinary care should have foreseen that the said dynamite under the circumstances would explode and injure plaintiff. That in obedience to said order of the said Jaredo plaintiff approached said place, and at such time, and in obeying said order, plaintiff did not know and appreciate the danger and risk incident of being in that vicinity, and did not know that the said Jaredo was keeping said box of dynamite in said immediate vicinity, and that plaintiff in approaching said stump was approaching a place of danger, or that he was in danger of being injured by the explosion of said dynamite in said box. That plaintiff was inexperienced and unskilled in the handling of dynamite, and the defendant knew, or by the exercise of ordinary care could have known, that he, plaintiff, was so unskilled and unlearned. That under the surrounding circumstances and conditions that the said dynamite would be exploded, and knew or should have known that plaintiff did not know that said dynamite was in such close proximity to said stump. That the defendant was guilty of negligence in failing to warn the plaintiff of the dangers incident to the approaching of said stump and of being in said vicinity, and of the danger of said dynamite exploding under the said conditions."

Defendant answered by a general demurrer, a general denial, and pleas of contributory negligence and assumed risk. A trial before the court and a jury resulted in a verdict and judgment in favor of the plaintiff for $1,500, and the defendant appealed.

[1] The first assignment of error complains of the court's action in overruling defendant's general demurrer to plaintiff's petition. Several propositions are advanced under this assignment, the substance of which is that the plaintiff having alleged various and sundry acts of commission and omission that caused his injury, and then finally alleging, "or that in some other way the explosion was produced that caused the injury," his petition showed upon its face that it is a mere matter of guesswork as to what did cause or what was the proximate cause of the injury, and places the proximate cause thereof in the field of conjecture; that such being the state of plaintiff's pleading, no right of recovery was shown, and defendant's general demurrer should have been sustained. The question is fraught with some difficulty, but we have reached the conclusion that the demurrer was properly overruled. Among the various causes alleged for the explosion of the dynamite, which were evidently made by the cautious pleader with the view of meeting every phase of the evidence, it is specifically charged that the master in this case was guilty of negligence proximately resulting in plaintiff's injury in causing or permitting sticks of dynamite to be carried about on its premises capped and primed in an uncovered box containing a number of loose caps, which subjected the dynamite to exposures which may and do result in a premature explosion thereof. This alleged negligent manner of handling the dynamite may have been, it occurs to us, the direct or proximate cause of plaintiff's injury, regardless of the un-

known or indefinitely alleged particular thing that caused the explosion. If this view is correct, plaintiff's petition stated a cause of action. In other words, we hold, as is contended by appellee, that a petition which specifically avers, as does plaintiff's petition, the negligent manner of handling and caring for dynamite, and which charges that such negligence was the proximate cause of the injury complained of, does not leave the *proximate cause* open to mere guesswork and conjecture, even though such petition shows that the dynamite so negligently handled was exposed to several physical conditions, any one of which may have intervened so as to cause an explosion, and notwithstanding the petition expressly avers that such intervening cause is not known. Plaintiff's petition contains the following allegations: "That the defendant, through its vice principal, placed in the possession of, and under the control of the said Jaredo a quantity of dynamite; that the said vice principal inserted or caused to be inserted, or knew that there had been inserted, or by the exercise of ordinary care could have known that there had been inserted in the several pieces of said dynamite, dynamite caps and fuses, and also knew or should have known by the exercise of ordinary care, which it failed to exercise, that loose caps were placed in the same box with said dynamite, and placed or caused to be placed the dynamite so capped and primed and said loose caps in an uncovered box, and in this condition placed or caused to be placed the said uncovered box of said dynamite in the possession of and under the control of the said Jaredo, or allowed the said Jaredo to have and retain possession of an uncovered box containing loose caps and dynamite so primed."

[2] It has been well said that "while such a dangerous instrumentality as dynamite may be properly used without exposing the master to a charge of negligence, yet that fact does not by any means imply that he is discharged from the ordinary obligation to use reasonable care to protect his servants against injury therefrom." Indeed, it is a familiar and fundamental rule that reasonable care demands "increased watchfulness and greater caution in proportion to the dangerous nature of the instrumentality employed." It must be such care as is reasonably commensurate with a known danger and the seriousness of the consequences which are liable to follow its omission. The proposition that plaintiff's petition in this case was sufficient to authorize a recovery without alleging with absolute certainty the particular agency that caused the dynamite to explode seems to be well supported by authority. In Brown v. West Riverside Coal Co., 143 Iowa, 662, 120 N. W. 732, 28 L. R. A. (N. S.) 1260, the negligence charged was the storing of dynamite in a room provided by the master as a place of shelter, etc., for his workmen, and the court, in holding that whether or not the master had exercised reasonable care for the protection of his employés from injuries by the explosion of the dynamite was a question for the jury solely, said: "If the defendant was negligent in depositing the powder and dynamite in a place where their accidental ignition would necessarily endanger the lives of its servants, such negligence would be the proximate cause of the resulting injury, notwithstanding the source of the spark which explodes them be purely accidental or wholly unknown. Tissue v. Baltimore & Ohio Ry. Co., 112 Pa. 91, 3 Atl. 667, 56 Am. Rep. 310."

That blasting powder and other high-power explosives of modern invention are liable to accidental ignition, with destructive consequences, even where apparently reasonable care is exercised to prevent such occurrence, has been too frequently proven by recurring disasters to call for argument, and, if there be lack of reasonable care in storing them too near the servants' place of work, such negligence is not purged by the exercise of care in other respects." Tissue v. Railway Co., cited in the foregoing quotation, was an action to recover damages for the death of the husband and father of the plaintiffs, alleged to have been caused by the negligence of the defendant in storing a large quantity of dynamite so near the place where the deceased was employed as to kill him by the accidental explosion of it, and the court held that whether it was negligence on the part of the railway company to permit the dynamite to be stored in such a position that an accidental explosion of it might result in death or injury to its employés was a question of fact for the jury to determine. In the case of Anderson v. Smith et al., 104 Minn. 40, 115 N. W. 743, it appeared that the defendants left uncovered and unprotected a large quantity of dynamite in close proximity to a tent occupied by their employés, and that while Anderson was in this tent eating his dinner the box of dynamite was discovered to be on fire, which caused it to explode, causing Anderson to sustain thereby serious bodily injuries. The defendants contended on appeal that they were entitled upon the record to a judgment absolute in their favor because it disclosed no evidence to sustain the finding of the jury that the defendants were guilty of negligence, which was the proximate cause of the plaintiff's injury. This contention, however, was not sustained; the Supreme Court of Minnesota saying: "The defendants left uncovered and unprotected a large quantity of dynamite, an extremely hazardous agency under ordinary conditions, in close proximity to the tents occupied by their employés. They were charged with a high degree of care, commensurate with the intrinsically dangerous character of dynamite, to guard against injuries to their employés by dynamite. The defendants were clearly guilty of negligence in leaving the dynamite where

they did leave it." In the subsequent case of Froberg v. Smith, 106 Minn. 72, 118 N. W. 57, growing out of the same accident, it was held that the leaving of the uncovered and unprotected dynamite near the tent was the proximate cause of the employé's injury, notwithstanding the negligence of another employé may have intervened to bring fire in contact with the dynamite which caused it to explode.

In McCray et al. v. Railway Company, 89 Tex. 168, 34 S. W. 95, where the widow and children were suing to recover damages on account of the death of their husband and father, who was killed while in the employ of the railway company by the falling of a steel rail from one of the company's cars, the issue of negligence being whether or not the company was negligent in loading the rails on the car, the Supreme Court of this state, among other things, say: "It is a general rule that, when a servant sues his master or employer for damages arising from injuries caused by the negligence of the latter, the plaintiff must prove the negligence of the defendant, and that proof of the accident and injury alone will not be sufficient to authorize a recovery. However, it is well settled by authority that the circumstances attending the injury may be sufficient to establish the fact of negligence without any direct proof thereof. * * * It was the duty of the railroad company to place the cars in the hands of its employés in a condition reasonably safe to be handled by them in the course of transportation. * * * The loading of the rails was done by it or its servants, and if the accident was such that it would not have probably occurred in the ordinary course of transportation if the car had been properly loaded, the circumstances attending the accident would furnish sufficient evidence to authorize a verdict for the plaintiffs if no explanation were given to the defendant. If there be an explanation which would excuse the defendant, it has the means of making the proof and should do so, and the plaintiff should not be required to negative every circumstance which might possibly arise whereby the accident might have occurred."

The authorities cited by appellant are not believed to be in point. They are applicable only in that class of cases in which unlike the case before us, there can be no connection between the negligent method employed by the master and the injury resulting therefrom to the servant. Here the petition alleges specifically: "The defendant, acting through its officers and representatives, caused certain dynamite to be used in and about said premises, and that the defendant, through its officers, representatives, and agents, and its foreman, negligently, recklessly, and carelessly caused, permitted, and allowed said dynamite to be handled, carried, and exposed; that an explosion occurred, and that, as a direct and proximate result of said negligence and explosion, the plaintiff was injured." It is alleged at considerable length how this dynamite was intrusted to Jaredo to be carried about in an uncovered box, containing loose caps, the dynamite itself being capped, and the allegations show a negligent method of handling the dynamite used in the prosecution of appellant's work, which might reasonably have been the proximate cause of appellee's injuries, and distinguishes his case from those in which the doctrine of res ipsa loquitur, strictly speaking, was invoked and relied upon to sustain the charge of negligence; in other words, from those cases in which it was claimed that negligence could be assumed from the mere fact of the accident and the injury.

[3] The next contention is that the court erred in not granting the defendant a new trial in the court below, because the verdict of the jury is contrary to the law and the evidence in that the cause of the accident resulting in plaintiff's injury is left entirely open to conjecture and guesswork. In this contention we do not concur. The evidence is sufficient to warrant the conclusion that the defendant was guilty of negligence proximately resulting in plaintiff's injuries in causing or permitting the dynamite to be capped and primed before actually necessary for use in the prosecution of its work, and thus handled and carried about its premises, and in close proximity to where plaintiff was engaged in a performance of the duties required of him, uncovered and unprotected, substantially as alleged in plaintiff's petition. It shows with reasonable clearness and certainty, at least, that the plaintiff, a negro, had been in the employ of the defendant about a month and a half when injured; that he was employed simply as a laborer; that while dynamite had been, during his term of service, exploded by other employés of defendant around and near him, he had not handled or exploded any himself, and was ignorant of the manner in which it was being handled and cared for; that on the day of the injury, B. R. McConnell, defendant's vice principal, who had charge of the work of dynamiting, and who controlled and directed plaintiff and his fellow workman, Jaredo, ordered Jaredo to take a small wooden box with three or more pounds of dynamite in it, four sticks of which were primed with fuses and caps, and go and do some blasting of stumps; that it was customary or usual for the dynamite, used by defendant in blasting, to be capped and primed in the quarry before going out to do the work, and to be carried around unprotected; that plaintiff, without being warned or notified that the dynamite had been capped and primed, or of the dangerous character of the work, was directed by McConnell to go and assist Jaredo in blasting the stumps and to do whatever Jaredo instructed him to do; that, acting upon McConnell's orders, plaintiff went to where Jaredo was at work, and

that while assisting him, under his immediate directions, the box of dynamite, which had been set down upon the ground uncovered by Jaredo a short distance from where plaintiff was at work, exploded, mortally wounding Jaredo and seriously injuring plaintiff. The evidence further discloses with reasonable certainty, if not practically without dispute, that when dynamite is not primed there is no danger of it exploding, except from an extraordinary shock, and there is no evidence of any such shock; that when it is not capped there is little or no danger of an explosion of it from fire; that there were loose caps in the box with the dynamite, and that they may explode from fire coming in contact with them, and that the explosion of loose caps may create sufficient fire or concussion to explode capped and primed dynamite; that a traction engine was being used by defendant at the time plaintiff was injured about 100 or 150 yards distant from the place when the accident occurred from which sparks of fire were being emitted and blown in the direction of where the box of dynamite was placed when it exploded. The evidence is also sufficient to warrant the conclusion that the dynamite could have been carried without any danger of an explosion if it had not been primed before or until it was actually ready to be used, and if the caps had not been kept in the same box with it; but that priming it before starting out with it, and carrying it in the box unprotected with loose caps was the proximate cause of the explosion, regardless of what unknown physical fact or agency produced the explosion; and that defendant, in the exercise of ordinary care, ought to have anticipated or foreseen the injury to the plaintiff, or some injury of a like character to some other person similarly situated, as a probable result of handling the unprotected capped and primed dynamite. We conclude that the evidence was clearly sufficient to warrant a finding by the jury that the conduct of the defendant, in causing or allowing unprotected capped and primed dynamite to be handled and placed in close proximity to where plaintiff was at work, was negligence, and that such negligence was the proximate cause of plaintiff's injuries; in other words, we are of the opinion that the evidence discloses that the defendant's negligence in the respects referred to created the conditions which caused the plaintiff's injuries, and without which the accident would not have happened.

[4] There was no error in refusing defendant's special charge to the effect that the mere fact that the dynamite exploded raised no presumption of negligence on the part of the defendant. This instruction was clearly been improper.

[5] Nor do we think the court erred in regiven in another special charge requested by defendant, and its repetition would have

fusing to instruct the jury, as requested by defendant, that if they were unable to determine from the evidence what caused the explosion to return a verdict for the defendant. This charge was evidently asked upon the theory that the method of handling the dynamite could not be the proximate cause of plaintiff's injury, and that if the particular thing or agency that exploded the dynamite was left by the evidence a matter of conjecture or guesswork, plaintiff could not recover. As shown in the former part of this opinion we do not concur in this view of the law. The plaintiff pleads that the negligent method adopted and pursued by the defendant in handling the dynamite was the proximate cause of his injury, and we hold the evidence was sufficient to establish this charge. There was no proof from which the jury could fairly determine what physical fact or particular agency caused the explosion. The special charge under consideration would therefore have been confusing and misleading, and was properly refused. Indeed, the charge, in the state of the evidence, would have been practically equivalent to a peremptory instruction to the jury to return a verdict for the defendant. The court instructed the jury that it was the duty of the defendant to exercise ordinary care to so handle its dynamite that its employés would not be injured thereby, and that if the defendant failed, upon the occasion of plaintiff's injury, to exercise such care, and such failure directly and proximately caused plaintiff to be injured to find for the plaintiff, but that if they did not find that the defendant failed to exercise such care, or if they found that the failure to exercise such care, if there was such failure, was not the proximate cause of plaintiff's injury to return a verdict in favor of the defendant. These instructions properly applied the law to the facts, and leaves appellant without any just ground of complaint because of the refusal of its special charge.

[6] The fifth assignment of error charges that the court erred in refusing to rule on the defendant's motion to exclude the testimony of the witness Sam Johnson, relating to the question of the authority of McConnell and Jaredo, servants of the defendant, to employ and discharge men, before the defendant proceeded with its testimony. This, we regard as a matter largely within the sound discretion of the court and not reviewable on appeal, in the absence of a showing that this discretion was abused to the prejudice of the appellant.

[7] But if it can be said that ordinarily such a motion should be acted upon at such time as was requested by defendant, still it appears that defendant has suffered no injury by the court's refusal to do so in this instance, because the court afterwards instructed the jury that Jaredo was a fellow servant of the plaintiff, and defendant would

not be liable for his failure to exercise ordinary care for plaintiff's safety, and it has shown conclusively that McConnell was defendant's vice principal with authority to employ, direct, and discharge the plaintiff.

For the same reason the court's action in admitting the testimony complained of in appellant's seventh and eighth assignments of error became harmless and furnishes no ground for a reversal of the case.

We have carefully examined all of the assignments and believe none of them disclose reversible error. The verdict of the jury is supported by the evidence, and the judgment is affirmed.